# EMELINE McNALLY, et al., v. W. D. HAYNIE.

## COURT OF APPEALS, AUSTIN TERM, 1883.

*Probate Court—Jurisdiction.*—Under the laws of Texas, after some controversy and contrariety of opinion, it is settled that probate courts in matters relating to estates of deceased persons, are courts of general jurisdiction. Therefore, when an administration is properly opened in the probate court upon the estate of a deceased person, whatever the court may therein do within the limits prescribed by the constitution and laws of the State, is entitled to and will be accorded the presumption that the act was regular, and done in accordance with law.

Cases cited: Guilford v. Love, 49 Texas 715; Williams v. Ball, 52 Texas 608; Murchinson v. White, 54 Texas 83; Alexander v. Maverick; 18 Texas 196.

*Probate Record—What is—Sale—Notice.*—The record with which the purchaser at administrator's sale is bound, and with the recitals of which he is chargeable, is the application for the sale, the accompanying exhibits and the order of sale.

*Wm. Croft*, for appellant.

Appeal from Navarro County.

On the 2nd day of November, 1875, appellants brought this action of trespass to try title against appellee. The land sought to be recovered is situated in Navarro county, and is described in the petition. Mrs. McNally claims as the surviving wife, and the other appellants as children of W. A. Langham, deceased. Appellee claims the land as purchaser at a sale made by McNair as administrator of the estate of said W. A. Langham, deceased, made by virtue of an order of the probate court of Navarro county. Said sale duly reported and confirmed and deed executed by the administrator.

Appellants claimed that the administrator's sale under which appellee claimed was void, on two grounds: 1st, on account of fraud and combination between the administrator and appellee in procuring the order and having the sale made; 2d, because there was no debts against the estate at the time the order was made and that appellee knew the fact at the time and before the sale was made. May 10th, 1877, the case was tried by the court, and judgment was rendered for appellee.

There are but two questions to be considered, the same presented by appellants in reply to appellee's answer: first, as to the fraud and combination; second, as to the existence or non-existence of debts, etc.

Opinion by Watts, J.

It is insisted that the evidence clearly established a combination

between the appellee and McNair, the administrator of the estate, which resulted in fraudulently procuring an order of sale of the land in controversy, and the sale and purchase of the same by appellee, and that in this respect the finding of the court is against the evidence. The principle that fraud will vitiate any and all instruments and even the judgments and decrees of any and all courts is, so far as we are informed, of universal application, and beyond question if fraud by appellee and McNair in procuring the order and causing the sale to be made, is clearly established, then the sale must be held fraudulent and void.

The evidence relied upon to establish the fraud is the testimony of appellant, Mrs. McNally, to the effect that she told appellee before the sale that there were no debts against the estate, and that appellee and McNair were seen talking together between that time and the sale.

Appellee on the other hand testified that he never had any conversations or understanding with McNair about or concerning the sale of the land; that the attorney representing the estate told him that there were debts against the estate, and that he paid the full value of the land.

Upon this state of the evidence, the court below with the witnesses before it, where their manner of testimony could be fully observed, gave credit to the evidence of appellee, and in this particular the record does not show that the finding was clearly wrong, therefore the question of fraud will be considered as eliminated from the case in the consideration of the remaining question presented by the record.

Appellants claim that there were no debts against the estate at the time the order of sale was made, and for that reason the sale was a nullity, and that the appellee secured no title to the land by reason of his pretended purchase.

This sale was made under the probate act of 1848, and it must be borne in mind that this is not a direct proceeding to set aside and vacate the sale, but that the sale is attacked as a nullity in a collateral proceeding, and as well known the rules applicable to the one case are wholly inapplicable to the other. For instance, in a direct proceeding the sale might be vacated for irregularities rendering it voidable only, whereas, in a collateral proceeding it can only be successfully attacked when absolutely null and void. Upon the subject

of the jurisdiction of the probate courts, and the effect to be accorded to their orders, judgments, and decrees, there is a great diversity of decision.

This arises from the fact that in many of the states it is held that there are courts of limited jurisdiction, while in others they are held to be courts of general jurisdiction in matters relating to the administrations of the estates of deceased persons. Some confusion has grown out of the fact that occasionally the rules applicable to courts of limited jurisdiction have been at least partially applied in states where they are considered courts of general jurisdiction.

After some controversy and contrariety of opinion, the doctrine has become firmly settled in this State that our probate courts have general jurisdiction in matters relating to the administration of the estates of deceased persons. Guilford v. Love, 49 Texas 715, and authorities cited; Williams v. Ball, 52 Texas 608; Murchison v. White, 54 Texas 83.

Therefore, when an administration is properly opened in the probate court upon the estate of a deceased person, then the jurisdiction of the court attaches for the purposes of that administration, to the extent and within the scope and limits prescribed by the constitution and laws of the State, and whatever the court might do within these limits, is entitled to and will be accorded the general presumption that the act was regular, and done in accordance with law.

In respect to such matters, the enquiry is not strictly one of jurisdiction as to the subject matter, but as to whether or not the court has exceeded its legal authority in dealing with a subject matter over which it has jurisdiction. To illustrate the doctrine, after administration is properly opened, the jurisdiction attaches to all matters pertaining to that administration. In the exercise of that jurisdiction the court is authorized to order the sale of land for the payment of debts, and its orders for the sale of lands belonging to the estate, are entitled to and will be protected by the presumption that the court rightfully exercised its admitted jurisdiction, and the sale was ordered and made for the payment of debts.

In the thoroughly considered case of Alexander v. Maverick, 18 Tex. 196, which involved the legality of an administrator's sale made in pursuance of an order of the probate court, it was held in effect, that as the court had the power to determine the matter and make the order, that the purchaser was not bound to go behind, but might

rely upon the order. And the same thing has been held in subsequent cases, which it is not necessary to cite.

This general proposition is subject to this qualification, that the regularity of these orders will not be presumed against the record, that is, if the record discloses the fact that the court in the exercise of its jurisdiction over the subject matters has transcended the limits prescribed, that then the presumption is repelled and the order is no protection to the purchaser, as for instance, if the application which calls into exercise the power of the court to order the sale of lands, should disclose the fact that the purposes and objects for which the sale is asked are wholly foreign to that for which the court is authorized to make the order, then the purchaser would be chargable with notice of the vice in the sale, and would not be protected by the presumption of the regularity of the order.

Any other doctrine would result in overcoming the record by presumption, or rather indulging in presumptions against the record, which would have no foundation in reason or law. Withers v. Patterson, 27 Texas 491; Guilford v. Love, *Supra*.

In the application of the limitation upon the general doctrine that the purchaser is protected by the judgment, the difficulty arises in determining what constitutes the record against which the presumption cannot be indulged of the regularity of the order. Is it the entire records or papers of the administration, including exhibits, orders, accounts, and reports, or is it the particular application and accompanying exhibit, if any, that calls into exercise the power of the court, which constitutes the record for that purpose? Or presenting the question by illustration, suppose the application states that there are debts, and asks that the land be ordered sold for the purpose of their payment, and the order is made, and the sale is consummated, but in fact in the mass of exhibits, accounts and reports on file among the papers of the administration, it is shown that all the debts of the estate have been paid and settled. Under such circumstances would the purchaser be chargable with notice of that fact, shown by these exhibits, accounts and reports, and his title held void and subject to collateral attacks, or does the term record as used in this connection include only the application for the sale with the accompanying exhibits, if any, and the order of sale? If the purchaser at administrator's sale is chargable with notice of

everything shown by the entire record pertaining to administration, then notwithstanding the application for, and the order of sale, may both state that debts do exist and the sale is made to provide for their payment, still it would be held that the sale is valid and his title subject to collateral attack, such a doctrine, as was remarked in another connection in Murchison v. White, *Supra*, "would virtually destroy the validity and sanctity due the proceedings of a court of probate and beget interminable confusion and litigation in regard to our land titles." For if the purchaser at the administrator's sale is chargable with matters disclosed by other portions of what might be termed the record in the administration, so also all subsequent purchases under him would be chargeable with notice of the same defect in the title. Such a doctrine would indicate a want of confidence or trust in the integrity of these courts, such as ought not to be tolerated, and such as would destroy to a great extent their usefulness, and defeat the objects of their creation. A large portion of the lands of the country pass through the probate court, and the titles to the same are dependent upon the conclusive force to be attached to the orders of these courts, and especially where lands are sold by an administrator. Now if the purchaser at such sale is required to purchase at his peril, these lands will cease to be means of paying the debts of deceased persons.

Justice Bonner, in the case of Murchison v. White, said: "It is believed that a careful analysis of the cases on this subject will show that, in a collateral proceeding, the only contingency in which the judgment of a domestic court of general jurisdiction which has assumed to act in a case over which it might by law take jurisdiction of the subject matter and the person can be questioned, is when the record shows affirmatively that its jurisdiction did not attach in the particular case."

It seems to us that the record to which the purchaser at administrator's sale must look, and with the recitals of which he is chargeable, is the application for the sale with the accompanying exhibits, if any, and the order of sale. In the case before the court the application for the sale states that there are debts against the estate, and the order recites that it appeared to the satisfaction of the court that a necessity existed for the sale. This would as a general rule protect the purchaser, besides it does not affirmatively appear from

any part of the entire record of the administration, that there were not debts against the estate.

We conclude that there is no error in the judgment and that it ought to be affirmed.

Adopted.