B. F. WEEMS, RECEIVER, v. CATHERINE L. MASTERSON.

No. 3079.

1. **Regular Proceedings in Probate Sales.**—Whether probate proceedings were *regular* (by which we understand to be in accordance with the laws regulating the sales of a minor's property by a guardian in obedience to the orders of a Probate Court) is not a question of fact when there is no controversy as to the existence or contents of

the orders introduced in evidence. It was improper to· submit the issue to the jury without instruction applicable to the orders.

2. **Probate Courts are Courts of General Jurisdiction.**—That County Courts in all matters relating to the administration of estates of deceased persons and minors under the Constitution of 1845, as under the present Constitution, were courts of general jurisdiction as to all matters within the scope of the powers conferred upon them must be deemed the settled law of this State.

3. **Cases Adhered to.**—Alexander v. Maverick, 18 Texas, 179; Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 78; McNally v. Haynes, 59 Texas, 583; Martin v. Robinson, 67 Texas, 368; and Kleinecke v. Woodward, 42 Texas, 314, adhered to.

4. **Same—Presumptions in Favor of Jurisdiction**—All presumptions will be indulged in favor of the jurisdiction of such courts when exercised over a subject matter confided to them by law that will be in favor of the jurisdiction of any other court of general jurisdiction. Their judgments and decrees can not be collaterally attacked unless the record shows affirmatively the want of jurisdiction. In the absence of such a showing it must be presumed that the jurisdiction exercised in a given case was the exercise of lawful power.

5. **Case in Judgment—Guardian's Sale.**—In 1859 guardians applied for an order for sale of land of their wards, the petition being defective in description of the land, asked a sale upon the sole ground that the land, being valuable only for the timber upon it, was being injured by the depredations upon the timber. The court ordered ·the publication of the petition, and that an amended description be filed. The order for sale contained a description of the land, and recited due notice, and that there was a necessity for the sale. The guardians made the sale and it was confirmed, the decree ordering title deed to be made to the purchaser, etc. The ward after majority sued one holding through the guardian's sale and deed. *Held:*

1. From the fact that the order of sale declared that a necessity therefor existed it ought to be presumed that such an application (showing necessity) was filed before the order was made.

2. When the court declared that the sale was necessary it must be understood to have declared that it was necessary for one or more of the purposes enumerated in the statute.

3. We do not understand, however, that the judgment of the County Court declaring the necessity of the sale, ordering, and confirming it, would be void and therefore ·subject to collateral attack if no application to sell other than that found in the record was ever made. (The reason for sale in the petition is not one of the statutory grounds for asking such sale.)

4. To hold that everything necessary to authorize a Probate Court to direct the sale of property and to confirm the sale made must appear in the records of the court would be to deny to such courts· a general jurisdiction in probate matters, and to subject them to the rules applicable to special tribunals alone.

5. The court should have held the order of sale and confirmation of it conclusive of its legal necessity, and that the sale passed the title of the wards.

6. **Ward Attempting to Rescind Sale by Guardian.**—The plaintiff claimed the superior title notwithstanding the sale upon the alleged non-payment of the purchase money—the guardian's sale being on credit and the purchase money notes reserving the vendor's lien. Suit to rescind was brought thirty-three years after the sale and nineteen years after the marriage of the plaintiff. *Held*, that from the great lapse of time plaintiff had lost her right to rescind.

7. **Presumption of Payment.**—If it should be held that a guardian's sale under order of the Probate Court and confirmed by it should be regarded executory, which

is questioned in this case, from the lapse of thirty-three years the presumption of payment of the purchase money by the purchaser at the guardian's sale is so cogent that very satisfactory evidence of the non-payment should be produced to rebut such presumption.

APPEAL from Harris. Tried below before Hon. O. T. Holt, Special District Judge.

The opinion gives a statement.

*H. F. Ring,* for appellant.—1. More than twenty years having elapsed since the execution of the note the presumption of its payment was conclusive. Mills v. Alexander, 21 Texas, 164; Walker v. Emerson, 20 Texas, 706; 1 Greenl. on Ev., sec. 39; Wood's Prac. Ev., 80, 214; 2 Whart. on Ev., 1350; Sypert v. McCowen, executor, 28 Texas, 635.

2. The guardian's deed was valid. (1) Because a tract of timber land which is being depredated upon by persons unlawfully entering and cutting and carrying off the timber, as alleged in the petition, for sale, is "perishable property of a minor that is liable to waste or to be injured by keeping," within the meaning of section 24, Act of 1848, and in any event the discretion of the court in so considering it can not be reviewed in a collateral proceeding. (2) Because the court ordering the sale was a court of general jurisdiction and had jurisdiction in the premises.

3. If the presumption of payment of the note was not conclusive the evidence was not sufficient to overcome such presumption.

4. The legal title was in defendant (notwithstanding loose dicta to contrary) and the plaintiff was barred by her laches.

Guardian's sales: 2 Sayles' Early Laws Texas, sec. 26, art. 1914.

That Probate Court is one of general jurisdiction: Kleinecke v. Woodward, 42 Texas, 314; Williams & Co. v. Verne, 68 Texas, 414; Guilford v. Love, 49 Texas, 715; Gillenwaters v. Scott, 62 Texas, 672; Baker v. Zavalla, 1 U. C., 621 (Texas); Martin v. Robinson et al., 67 Texas, 371.

That legal title was in defendant (despite contra loose expressions): 2 Dev. on Deeds, 1235.

That plaintiff was barred by her laches: McMasters v. Wills, 30 Texas, 591; 12 Am. and Eng. Encyc. of Law, 566; Haskins v. Wallet, 63 Texas, 217; Hines v. Thorn, 57 Texas, 104; Brown v. Guthrie, 27 Texas, 610; Carlisle v. Hart, 27 Texas, 350.

5. If the presumption of payment of the note was not conclusive nevertheless such presumption of payment arising from lapse of time was not overcome by the evidence introduced. In any event the evidence was not sufficient to sustain the verdict.

Loss of evidence from lapse of time: 12 Am. and Eng. Encyc. of Law, 550, 553, 556.

*Jones & Garnet,* for appellee.—1. The deed from the plaintiff's guardian to John Brashear for the land in controversy expressly retaining a vendor's lien thereon to secure the payment of the purchase money, and there being no evidence that the purchase money had been paid, but all the testimony bearing on the subject showing that it had never been paid, and there having been no adverse possession of the land by appellant that would entitle him to claim anything by reason of the statute of limitation, the charge complained of was proper and should have been given.

2. Under the terms of the deed to John Brashear the superior title to the land remained in the plaintiff, and it could only be divested by proof of the payment of the purchase money.

No presumption will be indulged that a title appearing by the record to be in plaintiff has been divested by the doing of something, of which there is no evidence whatever, and which is expressly contradicted and disproved by the testimony of every one likely to know anything about it.

The cases cited by appellant under the third assignment of error have no application to a case of this kind.

The appellees in support of the above two counter-propositions cite: Baker v. Ramey, 27 Texas, 52; Baker v. Compton, 52 Texas, 252; Webster v. Mann, 52 Texas, 416; Jackson v. Palmer, 52 Texas, 427; Harris v. Catlin, 53 Texas, 1; Cassaday v. Frankland, 55 Texas, 452, and 62 Texas, 418.

3. The court did not err in refusing to give the charge referred to in the first assignment of error, because the land sued for was proved to belong to the plaintiff, Catherine Masterson, and there was nothing shown to divest the title out of her.

(1) The pretended order of sale in the guardianship of the Ewing minors was absolutely void, because the application for the order of sale, and upon which the order was based, did not state any ground or reason that gave the probate court the power or jurisdiction to order the sale of the land, and the court transcended its powers in ordering the land sold on an application setting forth as the reason for wanting a sale that trespassers were cutting the timber on the land. Article 3908, Paschal's Digest, was the only law in force in 1859 under which the probate court was authorized to order the sale of the minor's land, and it is not pretended that this law was complied with. Where the record is silent as to what sort of a showing the court acted on in ordering a sale the presumption would be that the proper showing was made, but presumptions of this sort as to the acts of the probate court are indulged in the absence of and not against the proof. The appellant having shown affirmatively upon what application the court ordered the sale, and it appearing therefrom that a sale of the land was asked for upon grounds and reasons that did not authorize a sale,.

and the facts not being such as under the law gave the court power or jurisdiction to order the sale, the order and all proceedings thereunder were void and did not affect the plaintiff's title to the land. Withers v. Patterson, 27 Texas, 491; Gillenwaters v. Scott, 62 Texas, 672; McNally v. Haynes, 59 Texas, 585; Martin v. Robinson, 67 Texas, 375.

(2) The court might possibly have had the power to order the sale of the timber on the land as perishable property, but it had no more power to decide that the land was perishable than it had to decide that land was personal property and liable to sale as such.

(3) Even if the order of sale was valid still the title remained in the plaintiff, because the deed from the guardian to John Brashear retained a vendor's lien on the land for the unpaid purchase money, and there was no evidence that the purchase money had been paid, but on the contrary the direct and positive testimony was that it had never been paid, and there was never any adverse possession by John Brashear or any one claiming under him that could in any way or manner affect or impair plaintiff's title.

STAYTON, CHIEF JUSTICE.—The land in controversy formerly belonged to Mrs. Masterson, *nee* Ewing, and Alexander Ewing, and she is entitled to the judgment rendered in the court below in her favor, unless title to the land passed by a sale made by her guardians through whom appellant claims as receiver of the property of the City Bank of Houston.

Appellant's title rests on proceedings of the Probate Court for Harris County, which began with the following petition filed by the guardians of her estate and of that of Alexander Ewing:

"*State of Texas, County of Harris.*—To the Honorable the Probate Court of Harris County: Your petitioners would respectfully represent that they are the legal guardians of Alexander and Catherine Ewing, minors of Dr. Alexander Ewing, deceased. They further represent that a certain tract of land belonging to said minors and heirs, lying .on Buffalo Bayou, about seven miles westwardly of the city of Houston, in the county of Harris, is constantly depreciating in value on account of the depredations that are constantly being made by parties unlawfully entering upon said land and cutting and carrying off the wood and timber, said track being almost valueless for any other purpose but wood land.

"They further represent that it is their belief that it will be for the interest of said minors to sell the land and invest the proceeds in some other way; they further represent that personally they have no other object in view than to promote the interest of said heirs.

"A. J. HAY,
"E. E. HAY,
"Guardians of Alexander and Catherine Ewing, minors.

"Sworn to and subscribed before me by A. J. Hay, June 4, 1859.

"J. B. Dart, Clerk.

"By J. Brashear, Deputy."

At the term to which this petition was filed the court ordered publication of notice of the application to be made and required a more definite description of the land to be given.

At the August Term, 1859, the court directed the guardians to sell the land on a credit of twelve months, the order containing a sufficient description of the land.

The guardians reported to the November Term of the Probate Court for the year 1859 a sale of the land to John Brashear for the sum of $1700, and the sale was confirmed and guardians directed to make a deed to the purchaser on his complying with the terms of sale.

On December 1, 1859, the guardians executed a deed to John Brashear reciting the orders of the Probate Court, that the purchaser had executed his promissory note for the purchase money, and retaining a lien on the land to secure its payment. That deed was duly recorded on June 28, 1860.

John Brashear conveyed the land to E. and F. Reichardt on June 18, 1861, by a deed recorded June 20, 1861, and nine other conveyances were made from the year 1861 to 1886, all of which were recorded soon after the deeds were made, and the last of these is that through which the City Bank of Houston claimed.

John Brashear died three or four years before the institution of this suit and it does not appear whether the guardian A. J. Hay was alive at the time of the trial.

Defendant requested the court to instruct the jury to find in his favor, and the court gave the following instructions: "If the jury believe from the evidence that the proceedings held in the Probate Court of Harris, whereby the land in question was sold and conveyed to John Brashear, were regular and that said land was by such conveyance conveyed to said Brashear, then and in that instance said proceedings were regular and can not be attacked in this case. If the jury believe from the evidence that the proceedings were in all things regular in the County Court, and that a deed was made to Brashear but that the purchase money has never been paid, you will find for the plaintiff."

Whether the probate proceedings were "regular," by which we un-understand to have been meant in accordance with the laws regulating the sale of a minor's property by a guardian in obedience to the orders of a Probate Court, was not a question of fact, there being no controversy as to the existence of the orders and their contents for the determination of the jury, but was a question of law to be determined by the court; and the same is true as to the effect of those orders and the deed executed by the guardians.

The effect of the charge was to inform the jury that the proceedings in the Probate Court and guardians' deed, if in accordance with the laws regulating the sale of lands belonging to a minor, would pass title, and that if they did this they were regular and not subject to attack in this case. This charge gave to the jury no information as to the rules of law applicable to the case by which they were to be governed.

The second charge quoted in part is subject to like objection, and that part which declares the effect of the failure of Brashear to pay the purchase money will be considered in another connection.

The law in force when the land was sold provided that "whenever any guardian of the estate of a minor shall represent to the chief justice that such minor has not sufficient means for his proper support and education, or to pay the debts against his estate, without a sale of some portion or all of the real estate or slaves of such minor, such chief justice, if satisfied of the truth of such representation, shall order a citation to be published in some newspaper printed in the county, if there be one, if not then in some newspaper printed in the nearest adjoining county where there is one, for four successive weeks; which citation shall state the application for such sale, the property sought to be sold, and the term of the court when the application will be acted on, and shall require all persons interested in the welfare of such minor to appear and show cause why such sale should not be made as applied for. At the term of the court named in such citation, or at some subsequent term of the court to which the application may have been continued, the chief justice, if satisfied that the citation has been published according to law, shall proceed to hear the application and any opposition that may be made thereto, and if satisfied that a necessity exists for a sale of any such property, he shall order it accordingly." Pasch. Dig., art. 3908.

The original application for sale did not describe the land to be sold, and as before stated the court required a further statement to be made, but that was not introduced in evidence and we are therefore left in ignorance of its contents, but the order directing the sale bears evidence that another petition was filed, for it was made in reference to "the sale of a certain tract of land belonging to said minors mentioned in said petition," "the tract of land mentioned in said petition, two million eighty-three thousand and thirty-three square varas granted to Alexander Ewing by Patent No. 90, vol. 6, dated January 21, 1847, and recorded in Harris County record of deeds, book R, 555, 556, on Buffalo Bayou, seven miles westerly of the city of Houston."

The entire order is as follows:

"In the matter of the petition of A. J. Hay and Elizabeth E. Hay, guardians of these minors, for the sale of a certain tract of land belonging to said minors mentioned in said petition:

"It appearing to the court that a sale is necessary and will be of advantage to said minors, and it also appearing that due notice of the filing of said petition was given by publication as the statute requires, and no one appearing to oppose the same, it is ordered, adjudged, and decreed by the court that the said A. J. and Elizabeth E. Hay, guardians of said minors, sell at public auction to the highest bidder on a credit of twelve months, at the court house door in Harris County, on the first Tuesday in October, 1859, between the legal hours of sale, after twenty days' notice, and otherwise as the law directs, the tract of land mentioned in said petition, two million eighty-three thousand and thirty-three square varas granted to Alexander Ewing by Patent No. 90, vol. 6, dated January 21, 1847, and recorded in Harris County record of deeds, book R, 555, 556, on Buffalo Bayou, seven miles westerly of the City of Houston."

Thus the Probate Court adjudged that due notice as required by statute was given of the application and that a sale of the land was necessary; and on the coming in of the report of the sale it was confirmed by the following order:

"The guardians of these minors having made a report of sale and the same being examined and found correct, and it appearing to the court that said sale was conducted in all things according to law and the order of sale, the same is approved and confirmed, and it is decreed that A. J. Hay and E. E. Hay, guardians of the minors of Alex. Ewing, deceased, make and execute to John Brashear, the purchaser of said sale, a deed and conveyance of all the right, title, and interest of these minors in and to two million eighty-three thousand three hundred and thirty-three square varas of land on Buffalo Bayou, about seven miles westwardly of the city of Houston, granted to Alexander Ewing, for a more particular description of which reference is made to the patent granted by the State of Texas, and recorded in Harris County record of deeds, book R, pages 555 and 556, upon the purchaser complying with the terms of sale."

That County Courts in all matters relating to the administration of estates of deceased persons and minors, under the Constitution of 1845, as under the present Constitution, were courts of general jurisdiction as to all matters within the scope of the powers conferred upon them must be deemed the settled law of this State. Alexander v. Maverick, 18 Texas, 179; Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 78; McNally v. Haynes, 59 Texas, 583; Martin v. Robinson, 67 Texas, 368; Kleinecke v. Woodward, 42 Texas, 314.

From this it follows that all presumptions will be indulged in favor of the jurisdiction of such courts when exercised over a subject matter confided to them by law that will be in favor of the jurisdiction of any other court of general jurisdiction, and that their judgments and decrees can not be collaterally attacked unless the record shows the want

of jurisdiction.   In the absence of such a showing it must be presumed
that the jurisdiction exercised in a given case was the exercise of law-
ful power.

In the matter before us it is not contended that the County Court for
Harris County did not have jurisdiction of the subject matter, in that
it had power to order and confirm a sale of lands belonging to a minor's
estate, nor is it denied that its jurisdiction had attached as to the estate
of the minors being administered therein; but it is claimed that the
record shows that the necessary steps were not taken to authorize it to
order and confirm the sale of the land in controversy.   This is based
on the proposition that the application for order to sell did not state
that this was necessary for the support and education of the minors or
for the payment of debts of their estates.

Such is the application found in the record, but the order to sell
evidences the fact that another petition was filed which contained a
description of the land sold, and if it was absolutely necessary to con-
fer jurisdiction on the court that a petition should have been filed which
stated that a sale was necessary for one or more of the purposes enu-
merated in the statute, then in view of the fact that the order to sell
declared that a necessity therefor existed, it ought to be presumed that
such an application was filed before the order to sell was made.   When
the court declared that the sale was necessary it must be understood to
have declared that it was necessary for one or more of the purposes
enumerated in the statute.

We do not understand, however, that the judgments of the County
Court declaring the necessity for the sale, ordering, and confirming it,
would be void and therefore subject to collateral attack if no applica-
tion to sell other than that found in the record was ever made.

The Act of February 5, 1840, regulating the application for sale of
real estate belonging to the estate of a deceased person, and its sale,
was very similar to the act under which the sale in question was made.
Pasch. Dig., art. 1033.

In the case of Lynch v. Baxter, 4 Texas, 431, it appeared that an ap-
plication to sell land was made, which did not show that there was
not sufficient personal property to pay the debts and charges against
the estate and which did not describe the land, and in a collateral pro-
ceeding it was claimed that the order to sell, sale, and confirmation
were nullities, because the record of the Probate Court did not show a
necessity for the sale of the land.

In disposing of the case Justice Lipscomb, whose opinions went fur-
ther toward denying to the judgments and decrees of Probate Courts
that conclusive character universally given to the judgments and de-
crees of courts of general jurisdiction than those of any judge who ever
was a member of this court, said:   "That the Probate Court has juris-
diction over the estates of deceased persons can not be doubted; that

this jurisdiction was brought into exercise directly upon the property by her petition praying the decree for an order of sale of the land, is equally clear. The land was the subject matter on which the court exercised its jurisdiction. Whatever might be the order, it was a question before a competent court, and its decision was subject to revision by appeal, but could not be attacked in a collateral way. . * * * If the sale was without necessity existing at the time the order was made for such sale, still the order was conclusive until it had been set aside by proceedings having that object directly in view; and the purchaser, having purchased without fraud or collusion with the administrator, would be protected by the sale if the decree under which it was made was the decree of a court of competent jurisdiction."

In the case of Poor v. Boyce, 12 Texas, 443, it appeared that an application by an administratrix for the sale of land represented "that there has come into the hands of said administratrix a certain improvement or part of it, situated and lying at the mouth of Mill Creek, on Red River, in said county, rightfully belonging to the estate of said McRea, about which there will be a great deal of litigation and expense to the petitioner to obtain the land," and she therefore prayed an order of sale of the land "agreeably to the statute made and provided in such cases," and it was held that the petition of the administratrix gave the court jurisdiction; that all questions, in the absence of fraud, were concluded by its judgment, and that it was not necessary to the validity of the sale that the record should show that a necessity for it existed.

In Gillenwaters v. Scott, 62 Texas, 672, the grounds on which the sale of land was applied for by the administrator were not sufficient under the law to authorize the sale, but the condition of the estate was such that a proper application might have been made, and it was held that the order of sale and confirmation were not subject to collateral attack on account of the defective application. Kleinecke v. Woodward, 42 Texas, 312, asserts the same rule as the other cases.

To hold that everything necessary to authorize a Probate Court to direct the sale of property and to confirm a sale made must appear on the court's records would be to deny to such courts a general jurisdiction in probate matters and to subject them to the rules applicable to special tribunals alone.

The applications in the cases referred to were defective as was that found in the record before us, but they were sufficient to invoke the exercise of the jurisdiction the court possessed over the subject matter; those interested must be conclusively presumed to have had notice of the application such as the law prescribed, and the decrees of the Probate Court in this collateral proceeding must be deemed conclusive of the fact that the sale was made for a lawful purpose and in a lawful manner in the absence of some evidence in the record showing to the contrary, other than the fact that the application was defective.

A proposition that a judgment of a District Court could be attacked in a collateral proceeding because pleadings were defective, if the court had jurisdiction of the subject matter and the parties, would not be advanced, and it would be readily conceded that however erroneous such judgment might be it would be conclusive on the parties until set aside by some direct proceeding for that purpose; and we are of opinion that this would be true even if the pleadings were so defective as to be bad on general demurrer, or as to present no issue of fact.

While proceedings in probate are to some extent *in rem,* we do not see that such is in all respects their character as to parties actually before the court in person or by legal representation; and in a proceeding in guardianship such as that on which the rights of the parties in this case rest, we do not see why the same rule that would be applied to an adversary proceeding in a District Court should not be applied to a ward whose guardian makes an application for an order to sell property of the ward's estate, obtains it, sells, reports the sale, and has it confirmed.

In this case we are of opinion that the court should have held the proceedings in the Probate Court conclusive of the validity of the sale of the land.

In McNally v. Haynes, 59 Texas, 585, it was suggested that if the application for order to sell lands of an estate should disclose the fact that the purpose or object of the sale was not such as would authorize the court to make the order, that then the purchaser could not rely upon it; but it seems to us that the fact that the application may be defective can not deprive an order of its conclusive effect in all collateral proceedings.

The court gave the following charge: "If you believe from the evidence before you that the land in question was sold by the guardians of plaintiff and that in the deed of conveyance the vendor's lien was retained to secure the purchase money, and that said purchase money had never been paid, then the superior title remains in the plaintiff until same has been fully paid off and discharged, and you will find for the plaintiff."

More than thirty years elapsed after the land was sold before this action was brought, and during that time the property changed hands many times, purchasers thereof presumably paying a valuable consideration therefor and placing on record their evidences of right. Plaintiff married nineteen years before she asserted any right to the land, and if the rule which permits one selling lands by contract purely executory in character could have application to this case, we are of opinion that the long lapse of time should bar her right to rescission. That is not an absolute right, and one who desires to enforce it should act with reasonable promptitude, and in all cases where a vendor has failed to assert such a right for a length of time that would raise a presumption of payment he can not afterward enforce it, on account of the nonpay-

ment of the purchase money, against one who has paid a valuable consideration for the property to another holding under a deed which becomes absolute title on payment of the purchase money without any further conveyance by the vendor. Walker v. Emerson, 20 Texas, 711.

The maintenance of a contrary rule would lead to results most ruinous. It may, however, be doubted if the conveyance of land under judicial sales ever ought to be held executory in character merely from the fact that a lien for the purchase money may be reserved in the deed through which the conveyance is made or even where a mortgage is taken. The presumption that the note executed by Brashear was paid would be very cogent after the long period of time that has elapsed, and to rebut it the evidence ought to be much stronger than that offered in this case. Mills v. Alexander, 21 Texas, 164; Sypert v. McCowen, 28 Texas, 636; 2 Whart. on Ev., 1360–1364; 1 Greenl. on Ev., 39; Lawson on Presumptive Ev., 327, *et seq.*

It is unnecessary, however, to consider the question of payment, for if plaintiff has lost her right to the land, as between her and the defendant it is not important whether payment was in fact made.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 27, 1891.