WHITFIELD et al. v. LA GRONE et al.
(No. 108.)

(Court of Civil Appeals of Texas. Beaumont.
Dec. 9, 1916. Rehearing Denied
Jan. 24, 1917.)

1. TENANCY IN COMMON &⟶33—DIVISION OF
LAND—EFFECT AS TO THIRD PERSONS.

A tract of 155 acres of survey of 755 acres belonging to a decedent was set apart to the widow by a particular description. Thereafter the entire land, except the 155 acres, was sold by the administrator. The grantees of the 155 acres, on finding that by some means unknown their land had been located on another part of the larger tract, so that it became entirely displaced, and its description did not conform to that originally made, exchanged deeds with the owner of the remaining part of the survey so that such grantees retained the 155 acres as actually located, and surrendered to the owner of the 600 acres the tract of 155 acres as originally described in the proceedings in which the same was set apart to the widow. *Held*, that such exchange of deeds did not give the heirs of decedent any interest in any part of the original tract of land, since the purchaser at the administrator's sale and the grantees of the 155-acre tract became tenants in common of the entire land, and they could partition it in any way they saw fit.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 25; Dec. Dig. &⟶33.]

2. TENANCY IN COMMON &⟶3—CREATION—
CONVEYANCE OF NUMBER OF ACRES FROM
SURVEY.

The effect to be given a deed which conveys a certain number of acres out of a larger survey, even where the grant restricts the interest of the grantee to a certain part of the larger survey, is that the grantee becomes by his deed a tenant in common with the owner of the larger tract, and his interest is represented by a fraction the denominator of which is a number equal to the number of acres in the larger tract and the numerator of which is a number equal to the number of acres conveyed.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 5–17; Dec. Dig. &⟶3.]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Trespass to try title by M. J. Whitfield and others against G. W. La Grone and others. From a judgment for defendants, plaintiffs appeal. Reversed and rendered.

Young & Young, of Marshall, and R. W. Priest, J. G. Woolworth, Frank Lawson, and II. N. Nelson, all of Carthage, for appellants. W. G. Banks, of Carthage, for appellees.

MIDDLEBROOK, J. This is a suit in trespass to try title, in which there were numerous parties, but for a determination of this appeal it is necessary to deal with Whitfield and his wife, Julia Whitfield, and G. W. La Grone and others, being the heirs of Adam La Grone, deceased, alone, and as we view the case, a correct determination of the same is dependent upon the issues involved between Whitfield and the La Grones, and as to these the crucial test is whether or not all of the land belonging to the Adam La Grone estate was regularly transferred and conveyed by Adam La Grone himself, and after his death by his administrator, G. W. La Grone, who was his son. If, under the proceedings of the probate court of Panola county, in matters pertaining to the estate of Adam La Grone, deceased, his administrator disposed of the remaining part of a half league of land owned by Adam La Grone, and title was vested out of the La Grones under the administration proceedings in the probate court of said county, the La Grones cannot recover the land sued for in this case. If, on the other hand, the proceedings in the probate court and deeds by the administrator of Adam La Grone's estate did not dispose of all of the land remaining in said half league at the death of Adam La Grone, but left 130 acres, the amount claimed by the La Grones, not disposed of, then they should recover.

As has already been indicated, Adam La Grone owned a half league of land in Panola county, Tex., as is shown by plat A. During his lifetime he conveyed out of said half league, on June 26, 1845, 640 acres to A. T. La Grone; December 31, 1846, to W. A. La Grone, 177 acres; May 11, 1848, to Francis Bounds, 640 acres; and on February 1, 1851, to J. George 100 acres of land—as is represented in plat B.

About the latter part of 1857 Adam La Grone died, and at the January term, 1858, of the probate court of Panola county W. A. La Grone was appointed administrator of the estate of his father, Adam La Grone, deceased. These proceedings are all regular.

On January 30, 1860, in a contested proceeding among the La Grone heirs, W. A. La Grone's final act as administrator of the estate of Adam La Grone, deceased, was approved, and commissioners were appointed to partition the estate among the heirs. On April 3d the commissioners appointed to partition the estate made their report to the probate court, and in the report they set aside 155 acres of land to Asa La Grone. Asa La Grone was the second wife of Adam La Grone, deceased. There were no children born to Adam La Grone and his second wife, and the 155 acres set aside to Asa La Grone was set aside to her as her one-third life estate of the estate of her deceased husband, Adam La Grone, together with some personal property not necessary to mention. Asa La Grone assigned her lifetime estate to James La Grone. The commissioners appointed to partition the estate of Adam La Grone, deceased, reported as to this particular issue as follows:

"To James La Grone, as assignee of Asa La Grone, the wife of Adam La Grone, deceased, the following property, to wit: One negro slave, a woman of dark brown color, aged about 45 years, and worth the sum of $650, also 155 acres of land, worth $3.50 per acre, making a total of $1,192.50, making as near as possible one-third of said estate. The above land de-

scribed and set apart to James La Grone as assignee of Asa La Grone, is described as follows:

To commence at the southwest corner of a certain section of land sold to F. Bounds by Adam La Grone, deceased, as shown by reference to the foregoing plat on the old La Grone line, and running north with said Bounds line to the northwest corner of said survey; thence north with A. J. La Grone line to a lightwood stake, and a pine tree marked L; thence west so as to include the improvements of James La Grone; thence south to said La Grone's line; thence east to the place of beginning—so as to contain 155 acres of land."

C is a copy of the plat made and referred to by the commissioners. They reported further as follows:

"And the undersigned commissioners report and say that the remainder of the property belonging to said estate is incompetent of a division and distribution among the heirs of said Adam La Grone, deceased, for the following reasons, to wit: The value of said property, one negro boy, Tobe, about ten years, of yellow complexion, worth $1,050.00, and 600 acres of land worth the sum of $2.50 per acre, cannot be equally divided among the heirs, and further report this to be all the property shown us by the administrator of Adam La Grone, deceased."

PLAT A.

PLAT B.

PLAT C.

PLAT D.

These proceedings are all regular and in proper legal form. The report of commissioners was approved by the probate court of Panola county, Tex., on the 30th day of April, 1860, and judgment entered accordingly. In this judgment the 155 acres is apportioned to the assignee of Asa La Grone, as was recommended by the commissioners of partition in their report. Decree was also entered that upon the death of said Asa the said slave Harriett and the 155 acres of land be equally distributed among the proper distributees of the estate of Adam La Grone, deceased. As to the remaining land belonging to the estate of Adam La Grone, the following judgment and decree is entered:

"And it appearing from said report that all the other property belonging to said estate for distribution is incapable of fair and equal distribution among the distributees of said estate, and Allen La Grone, one of said distributees, coming into court and takes the negro boy Tobe, belonging to said estate, at the appraisement value of same, and filing his bond to the other distributees as the law directs, it is ordered by the court that said Allen take said boy Tobe on credit of 12 months at 10 per cent. interest on the sum due to the other distributees.

"And it is further ordered by the court that all the land belonging to said estate, except the said 155 acres be sold on a credit of 12 months as the law directs, and upon collection of the proceeds of said sale of land, that it be paid over to the parties entitled to receive the same under a former decree of this court ordering said estate to be partitioned."

Then follows a distribution of costs among the heirs of the said Adam La Grone under the contest proceedings. In pursuance of the order of the court made at the April term, W. A. La Grone, administrator of the estate of Adam La Grone, deceased, conveyed the remaining land of the Adam La Grone estate to John L. Booty for the sum of $718.-50. The sale was made on a year's time, and mortgage notes taken by the administrator from John L. Booty, and the land is described in the sale thus:

" * * * Do hereby grant, bargain, sell, and convey unto the said John L. Booty, his heirs and assigns forever, by virtue and in pursuance of the orders, decrees, sale, confirmation, and powers above referred to, a certain tract of land situated in Panola county, on the east side of Sabine river, about 5 miles southeast from Pulaski, and known as Adam La Grone headright, containing 600 acres."

The decree of the probate court ordering the sale of the land is recited in the former part of the deed. This sale is duly confirmed by the probate court.

John L. Booty died January 24, 1862, and at the time of his death the mortgage notes for the land bought from the La Grone estate had not all been paid. There were several credits on it not necessary to mention. J. H. Booty was duly and regularly appointed administrator of the estate of John L. Booty, deceased. W. A. La Grone, administrator of the estate of Adam La Grone, deceased, filed suit on the note against J. H. Booty, administrator of the J. L. Booty estate, and on the 27th day of February, 1867, judgment was entered for the unpaid balance on said note, and the mortgage foreclosed. These proceedings were all in the probate court, and the foreclosure proceedings were not contested by J. H. Booty, administrator of the estate of John L. Booty. The indications are that the proceedings were agreed proceedings.

In pursuance of the orders of the probate court, J. H. Booty, administrator of the estate of John L. Booty, sold the 600-acre La Grone tract of land, upon which the mortgage lien had been foreclosed, to B. F. Jordan and A. J. Booty, on the first Tuesday in April, 1867, and made his report April 29, 1867, to the probate court of Panola county, which report was confirmed by the court, and decree entered accordingly, and the administrator was ordered to make conveyance of the land to the purchasers. In the sale the land brought $400, which was not sufficient to pay off the mortgage lien, but the undisputed testimony is that the administrator of the estate of John L. Booty, deceased, promptly paid the balance of the debt out of the funds belonging to the estate of John L. Booty, deceased, to W. A. La Grone, administrator of the estate of Adam La Grone, deceased. J. H. Booty made and delivered to A. J. Booty and B. F. Jordan deed of conveyance to the land ordered sold, and this deed was lost and never recorded.

On the 17th day of July, 1908, J. H. Booty executed a deed to A. J. Booty and B. F. Jordan, to supply the deed which had been lost, and had never been recorded. The deed is made by J. H. Booty, as administrator, and recites the orders of the court hereinbefore stated, and states that the purpose of the deed is to supply the missing deed, and in that deed the land is described as follows:

"Begin at the N. W. corner of the Adam La Grone, a red oak brs. S. 41° E 6 vrs. mkd 'A L'; thence south 442 rds. in the W. B. line of said La Grone, a pine mkd 'W'; thence east 113 rds. the S. W. corner of Mrs. N. Hooper's 155-acre tract; thence north 238 rds, a hickory brs. W. 1 vr. mkd 'W'; thence with Hooper's N. B. line east 92 rds.; thence N. 200 rds. a stake, a pine brs. S. 45° E. 8 vrs. a red oak brs. W. 45° E. 6 vrs. mkd 'C. L.'; thence N. 55° W. 40 rds. a stake the corner of 177-acre survey tract, P. O. brs. N. 80° E. 9 vrs., a dogwood S. 52° W. 6 vrs. mkd 'W'; thence N. 35° E. 81 rds. a stake, the N. B. line of said A. La Grone's survey, a pine brs. —— mkd 'W'; thence with said N. B. line N. 55° W. 121 rds. to the beginning—containing about 560 acres of land."

The land described in the deed from J. H. Booty, administrator of the estate of J. L. Booty, to A. J. Booty and B. F. Jordan, was conveyed by A. J. Booty and B. F. Jordan to N. G. Barksdale on the 22d day of October, 1870, which deed was a general warranty deed, for a consideration of $500, describing the land as follows:

"In Panola county, Tex., on the east side of Sabine river about 5 miles S. E. from Pulaski, containing 600 acres of land, and being a part of Adam La Grone headright survey, being the land bought by John L. Booty of William A. La Grone, as administrator of the estate of

Adam La Grone, deceased, and afterwards bought by Augustus J. Booty and B. F. Jordan from J. H. Booty, as administrator of said John L. Booty, deceased."

Which deed was duly and properly recorded.

On the 6th day of December, 1882, N. G. Barksdale, who died before the institution of this suit, deeded to his daughter, Julia C. Whitesides, a number of tracts of land in one deed, in which was included the 600 acres of the La Grone half league. This deed was acknowledged and recorded December 2, 1882.

On the 24th day of November, 1896, Julia C. Whitesides sold and conveyed the land in controversy to defendant Julia N. Whitfield, which deed was duly and properly recorded. In that deed the land is described as follows:

"Situated in Panola county, Tex., about five miles S. E. from Pulaski and on the east side of Sabine river, and being about 600 acres of the headright survey of Adam La Grone, being the land bought by John L. Booty from William A. La Grone, deceased, and afterwards bought by Augustus J. Booty and B. F. Jordan from J. H. Booty, as administrator of the estate of John L. Booty, deceased."

Then follows a description of the land as is set out in the field notes in the deed from J. H. Booty, as administrator of the estate of John L. Booty, deceased, to A. J. Booty and B. F. Jordan, dated July 17, 1908.

Asa La Grone died in 1861, and on December 29, 1861, W. A. La Grone filed his application for partition in the probate court of Panola county, Tex., as follows:

"Now comes W. A. La Grone, administrator of the estate of Adam La Grone, deceased, and shows that there remains in his hands as said administrator a negro woman, Harriett, and 155 acres of land, and prays the court to appoint commissioners to partition and distribute the said property among the heirs of said deceased. After hearing the application, it was ordered by the court that Samuel Party, G. W. Geter, and B. B. Anderson be appointed commissioners to partition and distribute the above-described property among the heirs of Adam La Grone, deceased, and make their report to this court."

On the 26th day of January, the commissioners appointed by the court reported, appraising the value of the negro woman at $350, and the 155 acres of land to be worth $1.50 per acre, and reported that the property was incapable of division among the heirs, and recommended sale of the property, and decree was entered accordingly ordering the sale of the 155 acres of land and the negro woman, Harriett, and the distribution of the proceeds among the heirs of Adam La Grone, deceased. At the June term of the county court, 1862, W. A. La Grone reported his sale of the property, in obedience to the decree of the court at the February term thereof, in which he sold the 155 acres of land to J. M. Ramsey for the sum of $210, and the negro woman, Harriett, to Wm. McDaniel for the sum of $350. This sale was duly confirmed by the court on the 16th day of September, 1862, and the administrator was ordered to make deed to J. M. Ramsey,

which was done, and in said deed the 155 acres of land is described as follows:

"Lying and being situated in Panola county, Tex., on the east side of Sabine river, a part of the Adam La Grone headright survey, beginning at the southwest corner of tract of land sold to F. Bounds by Adam La Grone on the old La Grone line; thence running north with said league line; thence running north with said Bounds line to the northwest corner of said survey; thence with A. J. La Grone's line to lightwood stake and a pine marked 'J L'; thence west so as to include the improvements of James La Grone, deceased; thence south to the league line; thence east to the place of beginning—containing 155 acres of land."

The description "thence running north with said league line" evidently is an error, and the writer of the deed discovered his error and immediately wrote "thence running north with said Bounds line," etc., and neglected to strike out the erroneous clause he had just entered in the description.

These probate proceedings were all regular, the sale to Ramsey was duly confirmed, and the deed recorded.

On the 17th day of September, 1862, J. M. Ramsey conveyed the 155 acres, Asa La Grone tract, to P. G. Graves, by warranty deed, for $450, which deed was duly acknowledged, and was duly recorded on the 26th day of January, 1863. In that deed the 155 acres of land is described as follows:

"A part of the Adam La Grone survey, beginning at the southwest corner of a certain tract of land sold to F. Bounds by Adam La Grone, deceased, on the old league line; thence north with the said Bounds line to the northwest corner of said survey; thence north with A. J. La Grone survey to a lightwood stake, and a pine marked 'J L'; thence west so as to include the improvements of the James La Grone, deceased; thence east to the place of beginning —so as to include 155 acres of land."

On the 21st day of January, 1880, John F. Graves and P. G. Graves conveyed the 155 acres of land to F. P. Hooper, by warranty deed, the consideration being an exchange of lands. The deed was duly acknowledged, and was recorded on the 3d day of October, 1881. In that deed the 155 acres of land is described by metes and bounds as follows:

"Beginning at a corner on Jackson's west boundary line, a stake, a pine brs. due N. W. 18 vrs. marked 'X'; thence north 230 rods along Jackson's and J. A. La Grone's line, a stake, a sweet gum vrs. S. W. 5 vrs. white oak brs. W. 60° —— 20 vrs. each marked 'X'; thence west 101 rods to a corner a stake a dogwood brs. W. 4 vrs. a hickory brs. N. 4 vrs. each marked 'X'; thence south 230 rods to a corner on Mrs. Hooper's N. line a stake a pine brs. N. 5 vrs. black gum N. 5 vrs. each marked 'X'; thence east 101 rods to the place of beginning—containing 155 acres of land."

It is to be noted here that this is the first description of the land otherwise than it was described by the commissioners appointed to partition the estate of Adam La Grone, deceased, and that this deed is of date January 21, 1880. We might say here also that no one seems to know who made these field notes, nor when they were made. The parties to this suit agree that this deed intended to convey the 155 acres of land described in

the deed from Ramsey to Graves, dated September 17, 1862. It is also agreed that prior to 1906 the heirs of F. P. Hooper made proper conveyance of the 155 acres of land to A. A. Alexander. On the 23d day of May, 1906, A. A. Alexander executed the following deed to Mrs. Julia N. Whitfield:

"Know all men by these presents that I, A. A. Alexander, of said state and county, for the purpose of settling the line of survey made for 155 acres, A. La Grone's headright of land in Panola county, Tex., conveyed to me, hereby make, execute, and deliver this deed of release and conveyance; that in running out the lines of said 155 acres it is discovered that the west line conflicts with the E. B. line of a tract owned by Mrs. Julia N. Whitfield, and it is agreed that my 155 acres shall remain as it is at present located and surveyed, and I hereby release and convey unto her, the said Mrs. Julia N. Whitfield all my right, title, and interest I have or may have in and to the 130-acre tract of same headright lying south of said 155-acre tract; that is, in locating the 155-acre tract it overlaps said Whitfield land as per field notes, and she is to take all interest I have in said 130 acres tract which 130 acre tract is described as follows: [Then follows the field notes.]"

On the same date Julia N. Whitfield made a similar deed to A. A. Alexander, which deed, in addition, contained the following recital:

"In consideration of the settlement of land line and for a deed made to Julia N. Whitfield by A. A. Alexander."

Alexander testified that it was some two or three years after he bought the 155 acres of land, as described in his field notes, which he claimed, that he found out that his field notes did not describe the 155 acres as it was originally set apart, and that his south line, as he was claiming, was not the south line of the Adam La Grone land. About 1906 Whitfield took a surveyor and went to survey out the land his wife had bought. He got Tom La Grone, one of the heirs of Adam La Grone, deceased, to go with him, and also got Mr. Alexander and had a surveyor by the name of Hull. The undisputed testimony, both of Whitfield and Alexander, is that in the surveying of the Whitfield land, even as it is described in the deed by J. L. Booty to A. J. Booty and Jordan, which he executed in 1908, conflicted with the land as described in the field notes of the Alexander 155 acres, which field notes first appear in 1880, and when Whitfield and Alexander so found the undisputed testimony of these two gentlemen shows that they immediately made a trade with each other, satisfactory to each, by the terms of which Whitfield agreed to let Alexander's north boundary line stand as he (Alexander) understood and wished it to stand, which took a part of the Whitfield land, as described in the Booty deed of 1908, and Alexander agreed to let Whitfield have all of the land south of where he thought and claimed his south boundary line to be, and as he desired his south boundary to stand, and they each made deeds accordingly. When this was done, it put the survey in the form as represented by plat D,

and, of course, by these deeds the 130 acres of land was segregated from the original 600-acre remaining survey of the Adam La Grone half league, which was sold under orders of the probate court, as hereinbefore stated.

Again, an actual calculation of the amount of land contained in the field notes as described in the deed from J. H. Booty, administrator, to A. J. Booty and Jordan, in 1908, shows that such field notes contain only 527 acres of land, and yet these field notes conflict with the field notes as claimed by Alexander. It neither adds to nor takes from the merits of this case, but the record shows that Whitfield and Alexander paid the taxes on their land each year on the La Grone grant, and that the La Grones never paid any taxes on any land after the winding up of the estate of Adam La Grone, deceased.

It is clear and certain that when the probate court approved the report of the commissioners appointed to partition the estate of Adam La Grone, deceased, among his heirs, and when they set aside the 155 acres to the assignee of Asa La Grone, the lines of the 155 acres had not been actually surveyed out, for they say to commence at the southwest corner of a certain section of land, etc., and again, when an actual survey of the Adam La Grone half league, and of the different tracts of land conveyed by him, as hereinbefore stated, is taken into consideration, the descriptions called for by the commissioners to partition are not compass calls, but they evidently made the partition and plat of the land, as represented by them, without an actual survey of the 155 acres of land. No one knows when the original field notes of the 155 acres of land, as claimed, and which was awarded to Alexander by the court, were made. The testimony is that they were old marked lines well established. The record shows no authority whatever to any person to make any such field notes. Hence there can be but one presumption, and that is that some one prior to Alexander segregated out of the 755 acres of the La Grone, as it stood at the time of the partition of the Adam La Grone estate, in a way and in accordance with field notes to suit himself, without considering his joint owner in the La Grone lands. It is also certain that some one made an error in making field notes of the 600-acre tract sold by the administrator of Adam La Grone, as well as the 155-acre tract, as set aside to Asa La Grone; for the field notes as made by J. H. Booty in 1908 for the 600-acre tract, according to the undisputed testimony of the case, conflict with the field notes of the 155-acre tract as claimed by Alexander. The orders and decrees of the probate court in the Adam La Grone estate in 1862 show conclusively to our minds that all of the Adam La Grone estate was legally disposed of by the administrator of said estate, and title passed out

of the La Grones, except the 155 acres, which was set apart to the widow of Adam La Grone for use during her life, and by those decrees John L. Booty and the assignee of Asa La Grone became owners in common of the remainder of the Adam La Grone estate, and up until the death of Asa La Grone, about 1867, John L. Booty and his heirs, and the assignee of Asa La Grone remained such owners in common, and this is true as to John L. Booty, his heirs and assigns, on down until the field notes were made of the 155 acres, as claimed by Alexander, to say the least of it. We do not know when these field notes were made, but it is certain that they were made after the estate of Adam La Grone was finally wound up by his administrator; for in his administrator's deed to the 155 acres of land he describes it as it was described by the commissioners appointed in the Adam La Grone estate, who set apart this 155 acres of land to Asa La Grone, and which was disposed of in the final acts of W. A. La Grone, administrator of the estate of Adam La Grone, deceased.

[1] The effect of the decree setting apart the 155 acres to the assignee of Asa La Grone was to give him an interest consisting of 155 acres of land in the Adam La Grone estate, so as to include his improvements, and the remainder of the Adam La Grone estate, which was described as 600 acres, as hereinbefore stated, would belong to John L. Booty. Waterhouse v. Gallup, 178 S. W. 774.

We think under the orders of the probate court of Panola county, Tex., hereinbefore set out, all of the land belonging to the Adam La Grone estate was legally disposed of by the administrator of the estate of Adam La Grone, deceased, and the title thereto passed out of Adam La Grone, and therefore his heirs had no legal claim to any lands theretofore belonging to said estate, which were disposed of by the administration, and the able trial court erred in rendering judgment for the 130 acres of land to the heirs of Adam La Grone. Weems v. Masterson, 80 Tex. 45, 15 S. W. 590; Davis v. Touchstone, 45 Tex. 490; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Macmanus v. Orkney, 91 Tex. 29, 40 S. W. 715.

[2] It seems to be a well-settled proposition of law in this state, since the case of Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53, that the effect to be given a deed which conveys a certain number of acres out of a larger survey, even where the grant restricts the interest of the grantee to a certain part of a larger survey, is that the grantee becomes by his deed a tenant in common with the owner of the larger tract, whose interest is represented by a fraction whose denominator is a number equal to the number of acres in the larger tract and whose numerator is a number equal to the number of acres conveyed. See Nye v. Moody, 70 Tex. 434, 8 S. W. 606; Dohoney v. Womack, 1

Tex. Civ. App. 354, 19 S. W. 883, 20 S. W. 951; Waterhouse v. Gallup, 178 S. W. 776.

In Alexander's testimony he says that he never claimed any other land than that described in his field notes. Alexander pleaded the several statutes of limitation, and the indications are that he could prove limitation to the lands he claims, though it is not impossible that he might be precluded on this plea under his own testimony as to mistaken identity of lines. However, it is not necessary to discuss this feature of the case, as we view it, but we mention it because appellees place great stress and importance upon Alexander's testimony that he claimed only the land included in his field notes, and therefore he could not convey Whitfield anything. We think it would not matter whether Alexander claimed the land running to the south boundary line of the La Grone half league. The undisputed evidence shows that Alexander's land, as he claimed, and Whitfield's land, as it was described in the supply deed, conflicted, and as has been heretofore stated, the effect of the conveyances by the administrator of the Adam La Grone estate was to convey all of the land remaining of the Adam La Grone estate at his death, and, so far as the La Grones are concerned, Whitfield and Alexander are owners in common of 755 acres in the La Grone half league sold by the administrator, and that therefore they had a right to partition this land between them as they saw fit, regardless of how their field notes may have read or as to what specific land they may have theretofore claimed on the La Grone half league, and when they did so, and such partition gave to Whitfield 130 acres of land which was segregated from the original tract owned by him and his predecessors in title from the La Grone estate, did not vest the title to the 130 acres back into the heirs of Adam La Grone. There are several assignments of error in this case, but we have deemed it necessary to deal with but one, which is to the effect that the trial court erred in rendering judgment for 130 acres of land in favor of the heirs of Adam La Grone, because the undisputed evidence shows that all title to the land in controversy had been divested out of Adam La Grone and his heirs, and was vested in Whitfield.

Whitfield disclaimed as to the 155 acres of land, so, other than as has been discussed, it was not in consideration. By the testimony of Hon. A. J. Booty, and the pleadings in the case, it is clearly shown that Booty and Jordan are setting up no claim to the land in question; in fact, Judge Booty testified that he and Jordan sold all of the land which they bought from the administrator of the estate of J. L. Booty, deceased.

Under our view of the case, judgment should have been rendered in the trial court in favor of Whitfield for the land described in his pleadings, both the 527-acre tract, and the 130-acre tract, as described in the deed

from Alexander to him, and the evidence being plain and undisputed, and, as we view the case, no evidence could be produced that would change the legal effect and status of the parties, therefore the case should be rendered by this court, and it is so ordered.

Judgment is therefore rendered here in favor of Julia N. Whitfield for the 527 acres of land·as described in her deed from Julia C. Whitesides, and the 130 acres as described in the deed from Alexander to Julia N. Whitfield, subject to and in accordance with the partition as made by Whitfield and Alexander in their quitclaim deeds hereinbefore mentioned.

Reversed and rendered.