SCHAEFFER v. WILLIAMS et al.*
(No. 6096.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 11, 1918. Rehearing Denied Jan. 15, 1919.)

1. GUARDIAN AND WARD ☞107—SALE BY GUARDIAN—COLLATERAL ATTACK.

Though application for sale of ward's land by guardian alleged no grounds for sale set forth in Sayles' Ann. Civ. St. 1897, art. 2653, judgment ordering sale cannot be attacked collaterally on account of such failure, and sale must be sustained in subsequent action of trespass to try title.

2. GUARDIAN AND WARD ☞111— SALE BY GUARDIAN—DEED—LANDS INCLUDED.

Deed of ward's land, executed by guardian in consummation of sale under order in probate, describing land as interest which ward had in real estate belonging to her deceased father's estate as one of heirs at law, held not to cover lands of ward derived ultimately from father through her deceased brother and mother.

3. GUARDIAN AND WARD ☞90—SALE BY GUARDIAN—ORDER OF COURT.

Under Rev. St. art. 3480, order of sale is essential to validity of sale of ward's lands by guardian, so that its terms must control as to property sold.

4. JUDGMENT ☞475—COLLATERAL ATTACK—PROBATE COURT—SALE OF LANDS—PRESUMPTION.

County court in probate is court of general jurisdiction, and its judgments and orders have absolute verity in collateral proceeding, presumption prevailing that, when, in order for sale by guardian, property is confined to certain interest in certain estate, court understood what it intended should be sold by guardian and confined sale to property described.

5. EVIDENCE ☞452—PAROL—SALE OF LAND—ORDER OF COURT—LATENT AMBIGUITY.

If there was latent ambiguity in description of ward's land in order of sale by her guardian, it could be removed only by consulting other parts of probate record, in subsequent action of trespass to try title, and not by testimony of witnesses as to what they thought the term "estate of" meant at the time.

6. ADVERSE POSSESSION ☞19 — TEN-YEAR LIMITATIONS—STATUTE.

Under Rev. St. art. 5678, in trespass to try title to recover land fenced with more than 5,000 acres owned by defendant, where testimony did not show that any part of land in controversy was cultivated and used for agricultural or manufacturing purposes, or was in actual possession of defendant, ten-year statute of limitations did not apply.

7. LIMITATION OF ACTIONS ☞14—STATUTE OF LIMITATIONS—"ACTUAL POSSESSION."

The "actual possession" of Rev. St. art. 5678, providing possession of land belonging to another by person owning or claiming 5,000 acres or more of lands inclosed by fence shall not be peaceable and adverse possession, contemplated by article 5675, unless there be actual possession thereof, means pedal possession, living upon, occupation of land, or making improvements.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual Possession.]

Appeal from District Court, Live Oak County; F. G. Chambliss, Judge.

Action by Martha Williams and husband against Rowena Schaeffer. From judgment for plaintiffs, defendant appeals. Affirmed.

Beasley & Beasley, of Beeville, and Denman, Franklin & McGown, of San Antonio, for appellant.

Dougherty & Dougherty and G. C. Robinson, all of Beeville, for appellees.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error denied by Supreme Court March 19, 1919.

FLY, C. J. This is an action of trespass to try title instituted by appellees against appellant to recover an undivided $77/128$ interest in three certain tracts of land in Live Oak county, said tracts containing respectively 640, 320, and 320 acres, each patented to Henderson Williams, assignee of J. Poitevent, as well as for rents and damages. Appellant pleaded not guilty, and limitations of three, five, and ten years. The cause was tried without a jury, and judgment rendered in favor of appellees for $69/128$ of the three tracts of land herein mentioned.

The evidence showed that the guardian, R. H. Brown, through whom appellant claims, conveyed by his deed to F. W. Schaeffer only $8/28$ of the land in controversy which was decreed to her by the trial court. Further necessary facts to a proper understanding of the decision of this court will be found throughout this opinion.

Error is claimed through the first assignment of error in the action of the court in holding that a certain sale made by R. H. Brown, guardian of the estate of Martha Williams, one of the appellees herein, was null and void, and in rendering judgment for her for a portion of the land sued for by her. Martha Williams was born in 1870, and her father, Henderson Williams, died in Live Oak county in 1875, and her mother, Mary Elizabeth Williams, died in 1877. R. H. Brown was appointed guardian of the person and estate of Martha Williams in January, 1877, and qualified in the March following. He returned an inventory of the property of his ward and administered the same. In January, 1878, although no debts were due by his ward and she had notes and cash amounting to $4,317.65, he applied for a sale of certain of her lands because of the land being owned jointly by others and the difficulties attending a partition of the same and because the land was decreasing in value and not revenue producing. The guardian sought the sale of all the real estate to which his ward might be entitled "in law and equity of the estate of H. Williams, deceased." On March 9, 1880, Brown made application again to sell "a distributive share of the real estate of the said Henderson Williams, deceased," belonging to Martha Williams, a minor. The ground for a sale was that the lands were unimproved and did not yield any revenue, and the timber was being cut and removed therefrom by depredators. An order of sale was granted to sell "the interest which the said minor has in and to the real estate belonging to the estate of Henderson Williams, deceased, as one of the heirs at law of said Henderson Williams." There was an order confirming the sale of the "ward's interest in the estate of her father, Henderson Williams, deceased." The deed was made to F. W. Schaeffer, deceased husband of the appellant, Rowena Schaeffer. In the granting clause of the deed

the guardian conveyed "all the right, title, claim or interest which my said 'ward, Martha Williams, has in or to the lands and real estate of Henderson Williams, deceased." The court held that the sale was null and void.

[1] The first application for a sale of real estate was made, by the guardian, on January 26, 1878; but no order of sale was made until March 16, 1880, and that order was made in answer to another application which was filed on March 9, 1880. The record fails to show definitely to which of the applications for a sale the order was directed. No necessity for the sale, however, appears in either of the applications, nor in the order of the court. It is stated in the applications and in the order that it would be advantageous to the estate to make the sale, but no necessity is shown in either for the sale.

It is held in Texas that probate courts are courts of general jurisdiction as to all matters within the scope of the powers conferred upon them by law. In the law of 1876, being article 2653, Sayles' Civ. Stats. 1897, it was provided that—

"When the income of the ward's estate, and the personal property thereof, and the proceeds of previous sales, are insufficient for the education and maintenance of the ward, or to pay the debts against the estate, the guardian of the person, or of the estate, or any person * * * interested in the ward, may, by application in writing to the court in which such guardianship of the estate is pending, ask for an order for a sufficient amount of real estate to be sold to make up the deficiency."

Article 2654 provides:

"It is the duty of the guardian to apply for such order whenever it appears that a necessity exists therefor, and to set forth fully in his application such necessity, and accompanying the application with an exhibit, under oath, showing fully the condition of the estate."

The last article is embodied in the Revised Statutes of 1911, being article 4156, but article 2653 has been greatly enlarged in its scope by the acts of 1913 (Acts 33d Leg. c. 151 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4155]), by the additional provision that non-revenue bearing property and an undivided interest in real estate may be sold. This law was anticipated by the guardian who sold the land in controversy by some 33 years. There was no such provision authorizing a sale of a ward's land previous to 1913, and none of the grounds set forth in article 2653 were set forth in the application or order of sale. The necessity mentioned in article 2654, it would seem, would be governed and qualified by the exigencies mentioned in article 2653, and no sale would be justifiable unless made under one of those exigencies.

In the case of Weems v. Masterson, 80 Tex. 45, 15 S. W. 590, which is relied upon by appellant, the sale was made in 1859, on an ap-

plication quite similar to the one in the case now before this court; but in the order of the court was a recital "that a sale is necessary and will be of advantage to said minors." The Supreme Court, through Chief Justice Stayton, held that a judgment of the district court could not be attacked collaterally because of defective pleadings if the court had jurisdiction of the subject-matter and parties, and said:

"While proceedings in probate are to some extent in rem, we do not see that such is in all respects their character as to parties actually before the court in person or by legal representation; and, in a proceeding in guardianship such as that on which the rights of the parties in this case rest, we do not see why the same rule that would be applied to an adversary proceeding in a district court should not be applied to a ward whose guardian makes an application for an order to sell property of the ward's estate, obtains it, sells, reports the sale, and has it confirmed."

The authorities cited in the opinion, as well as others, sustain it. Lynch v. Baxter, 4 Tex. 431, 51 Am. Dec. 735; Poor v. Boyce, 12 Tex. 443; Kleinecke v. Woodward, 42 Tex. 312; McNally v. Haynes, 59 Tex. 585; Gillenwaters v. Scott, 62 Tex. 672; Lyne v. Sanford, 82 Tex. 63, 19 S. W. 847, 27 Am. St. Rep. 852; Kendrick v. Wheeler, 85 Tex. 253, 20 S. W. 44; Driggs v. Grantham, 41 S. W. 408.

In the case of Taffinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814, the Supreme Court in following the Weems-Masterson Case said:

"Under the rules laid down in that case, the jurisdiction of the county court did not depend upon the showing in the application of one of the statutory causes for such sales. The absence of such a showing, or the statement of a reason which would not authorize a sale, might make the order of sale erroneous; but it does not follow that it was not within the power of the court to make such order. * * * The order of sale does not show on its face that it was made for the reasons stated in the application, or that facts not therein set up did not exist, which, under the law, authorized the sale."

This is carrying the presumption in favor of the validity of the judgment to the breaking point, but it is so settled and must be followed. Under the decisions the sale by the guardian of his ward's land must be sustained. It is not contended by appellees that the sale was void.

[2] There is no doubt, however, that the guardian's deed could not and did not convey any interest of the ward, in excess of the quantity of land described in the order of the probate court. The land was the community property of Henderson Williams and his second wife, whom he married in 1869, and by whom he had two children; the eldest being Martha, the ward and the real appellee herein. The other child was born after the death of Henderson Williams. The latter died in May, 1875, and the posthumous child was born in December, 1875. The latter died in the summer of 1876, leaving the mother and sister as owners of the land owned by it. The mother died in February, 1877. Henderson Williams had six children by his first wife. Those six children and the two by the second wife inherited one-half of the community lands from their father's estate; the share of each being one-eighth of one-half, or a one-sixteenth, undivided interest in the whole. When the posthumous child died, his part went to his mother and the seven children. When the mother died, Martha inherited her half of the community property and her part of the land of the posthumous child, and then she owned a total of $77/_{128}$ of the entire tract, $8/_{28}$ of which was inherited from her father. In the applications for sale of the land of the ward, the only interest described was the distributive share of the ward in the estate of Henderson Williams, deceased; in the order of sale the land was described as "the interest which the said minor has in and to the real estate belonging to the estate of Henderson Williams, deceased, as one of the heirs at law of said Henderson Williams." In the brief of appellant that language is copied, and it is said that the language "indicates the intention of the guardian and of the probate judge to sell the interest which the minor owned 'as an heir at law of Henderson Williams,' and it cannot be gainsaid that the language considered alone does not disclose a purpose to sell any interest save only that the minor so owned." The descriptive words applied to the land as being the interest of the ward in and to the land of her deceased father, Henderson Williams, are used at least four times in the deed of the guardian to Schaeffer. In the order of sale the land is so described, as well as in the order confirming the sale. The record of the probate court plainly shows that all intended to be sold by the guardian was the interest of the ward, inherited from her father. The interest inherited from the mother and the posthumous child is not mentioned, and to include that interest it must be read into the record. As said in the brief of appellant:

"The deed is not a loosely drawn instrument; it has all the formal parts of a good and sufficient deed, and the language used is plain, appropriate, well-considered, and carefully used, all disclosing that the writer was familiar with conveyancing and realized that the proper description of the property intended to be conveyed was essential to the validity of the conveyance."

It is inconceivable that a man, possessing the legal knowledge of conveyancing so fully attributed to him by appellant, should, when he intended all the interest of his ward in three tracts of land, described in the deed, describe the land sought to be conveyed as

"all the interest which my said ward, Martha Williams, had in and to the lands and real estate of her deceased father, Henderson Williams"; and again as "all the right, title, claim, or interest which my said ward has in or to the real property or lands belonging to the estate of her deceased father, Henderson Williams"; again, as "all the interest which my said ward has in and to the lands of her deceased father, Henderson Williams"; and again as "all the right, title, claim, or interest which my said ward, Martha Williams, has in or to the lands and real estate of Henderson Williams." The repetition of the description of the land in the deed, preceded by its use in the applications to sell and the order of sale and followed by the order of confirmation, strongly negative any desire or intention to convey any interest in the land except that indicated in the plain and oft-repeated description of the ward's interest in her father's property.

If the land had been described as "all of the minor's interest in the lands," as stated by appellant, the deed would have undoubtedly conveyed all of her interest in the entire three tracts; but her interest is always qualified and described as that inherited from her father. So in the order of sale the property authorized to be sold was "the interest which the said minor has in and to the estate of Henderson Williams, deceased, as one of the heirs at law of said Henderson Williams."

[3] The statute requires the land to be sold to be described in the order of sale so as to identify it. The order is essential to the validity of a sale by the guardian, and if essential its terms must control as to the property to be sold. Article 3480, Rev. Stats. While indefiniteness of the description of land in an order of sale might not invalidate the sale, if the land might be identified by it, still when the description is as clear as in this case we have seen no authority sustaining the view that other land might be shown different from that described in the order.

The statute provides that no sale of any property belonging to an estate shall be made by an executor or administrator without an order of the court authorizing the same, and that statute also applies to sales by guardians. Teague v. Swasey, 46 Tex. Civ. App. 151, 102 S. W. 458. By decisions of courts the application for sale may be missing and a confirmation not shown, and still the sale be sustained; but an order of sale is always essential. Being the essential part of the proceedings for a sale, its recitals are of vast importance, and in this case the order makes it explicit that the estate of the minor authorized to be sold is her interest in "the estate of Henderson Williams, deceased, as one of the heirs at law of said Henderson Williams." It is repeated in the order that the land to be sold is the interest "which the said minor has as one of the heirs at law of Henderson Williams, deceased, in or to any real estate belonging to the estate of said Henderson Williams, deceased." When that order was given, Henderson Williams had been dead for five years. His estate consisted of one-half of the property in controversy, and it immediately passed to his six children by the first marriage and his two children of the second marriage. Martha Williams inherited her share of that estate, and that comprised her entire interest in the estate of her father. She afterwards inherited a share of the interest of the posthumous child and then the half interest of her mother. These facts must have been known to R. H. Brown, the guardian, and he must have known of what the entire interest of his ward in the estate of her father consisted. It is admitted that he was an expert and competent conveyancer, and yet it is sought to make a plain description of the interest of the ward in her father's estate apply to property which came to her through her mother and the posthumous child.

[4] The county court, sitting in probate matters as in others, is a court of general jurisdiction, and its judgments and orders have absolute verity in a collateral proceeding, and the presumption must prevail that when, in an order, an estate is confined to a certain interest in a certain estate, the court understood what it intended should be sold by the guardian and confined the sale to the property described. To hold that the plain words of description in the order, which confined the interest in the land to a certain inheritance, would comprise other lands, would be to hold that the court did not understand the terms used by it and to indulge the presumption that a larger estate was intended. That there is no ambiguity in the description given in the application, order of sale, and deed of conveyance, is admitted by appellant; but it is sought to extend and broaden the description so as to include property not embraced in the description. Following the rule sought to be enforced through the second assignment of error that of construing the guardian's deed in connection with the orders of the court, nothing is evidenced except what is clearly expressed in the order of the court. While asking the enforcement of such a rule, which is reasonable and proper, from the statement it appears that it is sought to construe the deed and orders of the court by parol testimony as to the manner in which lands are colloquially described and other matters. It may be, as stated by witnesses, that many people speak of the community estate of a man and woman as that of the man, even though the man died and his children inherited his half of the estate and the wife had her half and died and left it to her heir; but that would not tend to show that an expert in conveyancing and a judge of a court of general jurisdiction would be so inaccurate as to embody an incorrect col-

loquialism in the orders of the court and in the recitals of a deed.

We are unwilling to adopt the contention of appellant that the 'language of the order of sale should not be given controlling effect over that used in the order of confirmation. The first is essentially necessary and indispensable; the latter might be supplied by evidence of recognition of the sale by the court without such confirming order. Robertson v. Johnson, 57 Tex. 62.

The power of the guardian to sell the property of his ward must depend solely upon the authority granted by the order of sale, and, if he sells different property from that for which the order was given, a confirmation of that sale could give no vitality to his action in selling. The order of confirmation must follow the order of sale, and that is what was attempted to be done in this case; for it is stated that a report had been made of a sale "in accordance with an order heretofore made in the matter of this estate," and any inconsistency with the description in the order of sale must give way to it.

[5] If there was a latent ambiguity in the description of the land, which we think does not appear, it could only be removed by consulting other parts of the record, and not by the testimony of witnesses as to customs and other matters. What witnesses thought was meant by the estate of Henderson Williams should not be permitted to change the plain meaning of words used in orders of court and deeds of conveyance. As said in the case of Collins v. Ball, 82 Tex. 259, 17 S. W. 614, 27 Am. St. Rep. 877:

"Here is neither a latent nor a patent ambiguity. There is a total misdescription of the land in dispute, and other distinct land, so far as the records of the proceedings disclose, is plainly described. In such case we can only arrive at what the court intended by what the court did, as manifested by its own records. To give effect to a supposed intention of the court, wholly unexpressed in any of the proceedings, would be, not only to contradict the records, but in effect to pass the title to the land by parol. Other land than that which is clearly described in the proceedings cannot be ingrafted into these records for the purpose of showing that it was in fact the land intended to be sold."

To a like effect is Watts v. Howard, 77 Tex. 71, 13 S. W. 966.

[6] Under the testimony, appellant failed to show a title by limitations. The land was fenced with more than 5,000 acres owned by appellant, and the testimony did not show that any part of the land in controversy was cultivated and used for argicultural or manufacturing purposes, or that it was in the actual possession of appellant, and the ten years' statute would not apply. Rev. Stats. art. 5678; Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265; Flack v. Bremen, 45 Tex. Civ. App. 473, 101 S. W. 537; Huling v. Moore,

194 S. W. 188. The description in the deed would not support five years' limitation, except as to the interest of appellee Martha Williams in the estate of her father, Henderson Williams, · deceased.

[7] The "actual possession" named in the statute last cited means pedal possession; that is, living upon or actually occupying the land, or placing improvements directly upon it. If it does not mean that, it renders nugatory the balance of the statute. Fields v. Allison, 171 S. W. 274.

There is no error presented requiring a reversal, and the judgment is affirmed.