### HOGG v. MAGNOLIA PETROLEUM CO. et al. (No. 597-4070.)*

(Commission of Appeals of Texas, Section A. Dec. 20, 1924.)

1. Chattel mortgages ⊚➾219—Purchaser of mortgaged property with mortgagee's consent takes good title.

One purchasing mortgaged property with mortgagee's consent takes good title and is not liable for conversion.

2. Mines and minerals ⊚➾79(1)—Lessor held not to have waived lien on royalty interest in oil by agreement authorizing purchase of oil.

Lessor, executing division order with purchaser of his royalty interest in oil produced by lessee, authorizing company purchasing oil from lessor to take and pay for it until agreement was terminated by either lessor or his assignee, and permitting them to sell or mortgage their interests, subject to terms of order, held not to have consented to sales by assignee to company after notice to latter that lessor was claiming lien.

3. Mines and minerals ⊚➾48, 55(1)—Oil in ground is realty, severable from rest of land by conveyance.

Oil in place in ground is real estate, and may be severed from remainder of land by conveyance.

4. Mines and minerals ⊚➾73—Oil and gas lease conveys determinable fee to minerals in place, subject to possibility of reverter, which lessor may convey by deed.

Oil and gas lease conveys to lessees determinable fee to oil and gas in place, subject to possibility of reverter to lessor, who could convey it by deed.

5. Mines and minerals ⊚➾79(1)—Notes executed by purchaser of lessor's royalty interest in oil produced held to create vendor's lien.

Deed of undivided thirty-second interest in gas, oil, etc., in land theretofore leased by grantor by instrument requiring lessees to deliver to him one-eighth of all oil produced, held sufficient to transfer title to such interest in grantor's possibility of reverter, and such share of oil delivered to him, thus authorizing grantee's execution of notes creating vendor's lien on such oil.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by F. D. Hogg against the Magnolia Petroleum Company and others. Judgment for plaintiff against defendant Magnolia Petroleum Company, and for the latter against defendant Ike A. Wynn, was reversed and rendered by Court of Civil Appeals (254 S. W. 580), and plaintiff brings error. Reversed, and judgment of district court affirmed.

J. E. Garland, of Lamesa, and J. A. Templeton, of Fort Worth, for plaintiff in error.

C. L. Morgan, of Fort Worth, and A. S. Hardwicke and W. H. Francis, both of Dallas, for defendants in error.

BISHOP, J. F. D. Hogg, plaintiff in error, being the owner of a tract of land, on February 2, 1908, executed and delivered to W. H. & D. W. Powers a lease whereby he granted, demised, leased, and let to said parties said land for the sole and only purpose of mining and operating for oil and gas. It was by the terms of said instrument agreed that the lease should remain in force for five years from its date and as long there-

after as oil or gas should be produced by the lessees, and in part consideration thereof the lessees agreed "to deliver to the credit of the lessor free of cost, in the pipe line to which he may connect his wells, the equal one-eighth of all oil produced and saved from said leased premises." The privilege of assigning the estate of either party was expressly allowed, and W. H. & D. W. Powers assigned their lease to the Sinclair Gulf Oil Company, and oil was being produced under said lease. The pipe line of the Magnolia Petroleum Company was connected with the wells on said land, and the last-named company was purchasing from Hogg the oil represented by his royalty interest as same was produced and run in its line, and paying him therefor at the prevailing price of the oil when received.

Hogg executed and delivered to R. H. Kimsey an instrument, termed a mineral deed, bearing date April 5, 1919, and acknowledged by Hogg on April 22, 1919, whereby, for a consideration recited to have been paid in cash, he granted, sold, and conveyed unto the said Kimsey "an undivided one thirty-second interest in and to all of the natural gas, oil, petroleum, coal, and all other minerals and mineral substances in, on, and under said land." This instrument recited that the Sinclair Gulf Oil Company owned the mineral lease on the land, and that "it is expressly understood that grantee herein is entitled to receive his proportionate part of all rents, lease money, and revenues hereinafter accruing by reason of the present or any subsequent lease on above described land." As part of the consideration for this assignment, Kimsey executed two notes, for the sum of $10,000 each, bearing date April 22, 1919, and reciting that they were given as vendor's lien against the one-fourth royalty interest conveyed to Kimsey. Hogg and Kimsey executed a division order as follows:

"April 5, 1919.

"To Magnolia Petroleum Co.: The undersigned certify and guarantee that they are the legal owners of Sinclair Gulf Oil Company wells No. 1 and up, on Hogg lease farm, more particularly described as follows: [Describing the land.]

| To. | Division of Interest. | Post Office Address. |
|---|---|---|
| F. D. Hogg | 1-32 R 1. | Desdemona, Tex. |
| R. H. Kimsey | 1-32 R 1. | Fort Worth, Tex. 1409 Summit Ave. |

"The undersigned (referred to as 'owners' or 'sellers') hereby authorize Magnolia Petroleum Company to connect with the above wells and receive all oil produced therefrom during the continuance of this contract, they to be paid for said oil according to their respective and several interests, as above set forth, same to be received and purchased from said parties severally in the proportion named, subject to the following conditions:

"(1) The oil run hereunder shall become the property of Magnolia Petroleum Company, and title to same shall pass to it as soon as the same is received into its custody.

"(2) The oil received under this division order shall be paid for by the purchaser (Magnolia Petroleum Company) to the party or parties entitled thereto according to the division of interests shown above, at the price posted by Magnolia Petroleum Company for the same kind and quality of oil in the particular field in which it is received on the day on which it is received by purchaser into its custody. Settlements therefor shall be made semimonthly. For the amount due on account of the oil received during the first fifteen (15) days of each calendar month, payment shall be made on or before the 25th day of such month; and for the amount due on account of the oil received during the balance of such calendar month, payment shall be made on or before the 10th day of the next succeeding month. These payments may be made by paying the party or parties entitled thereto in person or by mailing Magnolia Petroleum Company's check therefor to the addresses of said parties respectively as given above, or by deposit of the sum due to the credit of said parties respectively at ——— Bank at ———.

"(3) The Magnolia Petroleum Company shall deduct two (2%) per cent. from all oil received from said wells on account of dirt and sediment, and in addition shall deduct one-twentieth of one per cent. for each degree of artificial heat above normal temperature to which said oil shall have been subjected, and the oil shall be steamed, when necessary, to render it merchantable.

"(4) This contract shall continue in force for thirty (30) days and thereafter, until terminated upon notice in accordance with this paragraph. It is agreed that after the expiration of said thirty (30) days from date hereof, this contract may be terminated by Magnolia Petroleum Company, the purchaser, by its giving ten days' notice of its purpose so to terminate, and that any of the owners of said well interests may, by similar notice to Magnolia Petroleum Company, terminate this contract as to his interest, without, however, affecting the same as to the interest of the other parties.

"(5) Sellers severally agree to notify Magnolia Petroleum Company of any change of ownership; it being understood that any vendee or assignee of said wells or the production thereof shall take same subject to the terms hereof.

"(6) In case of any adverse claim of title to the property or the production therefrom the owners (sellers) respectively agree to furnish Magnolia Petroleum Company satisfactory evidence of title or, failing so to do, furnish upon resonable demand, satisfactory indemnity against such adverse claim or claims; and the said Magnolia Petroleum Company may retain the purchase price of the interest adversely claimed until the owner or owners thereof do so, or until the dispute as to ownership is settled.

"This contract is made subject to the declaration of trust of the trustees of Magnolia Petroleum Company, of date April 24, 1911, recorded in Book 166, page 628, Deed Records of Navarro County, Texas, and Book 120, page 347, Deed Records of Jefferson County, Texas, reference to which is here made."

After the execution of the division order, the Magnolia Petroleum Company received and paid Kimsey for the one thirty-second part of the oil produced and run into its pipe line, until Kimsey in May, 1919, conveyed his said interest to Leo Bloch, trustee. Hogg then notified the Magnolia Petroleum Company that he was claiming a lien on the oil represented by this interest, and after this notice the said company refused to pay Bloch for oil until it was indemnified against Hogg's claim. Thereafter Kimsey executed an indemnity bond, with Phillip B. Hopkins and Ike A. Wynn as sureties. After delivery to it of this bond, the Magnolia Petroleum Company paid Bloch $1,106.50 for oil received during August and September, 1919, after notice of Hogg's claim. Hogg thereafter filed suit against Kimsey, Bloch, and Sinclair Company on said notes and to foreclose his lien, and on May 7, 1921, secured judgment granting the relief sought.

On June 14, 1921, Hogg filed this suit against the Magnolia Petroleum Company, R. H. Kimsey, R. H. Kimsey, Jr., Phillip B. Hopkins, and Ike A. Wynn for damages for the conversion of the oil which Magnolia Petroleum Company received, and for which it paid Bloch after it was notified that he claimed a lien on the interest sold by him to Kimsey. The case was tried by the court without a jury, and judgment rendered for Hogg against the Magnolia Petroleum Company for the value of the oil delivered after notice of his claim, and in favor of the Magnolia Petroleum Company against Wynn upon the indemnity bond, all other parties having been dismissed.

The Magnolia Petroleum Company and Wynn appealed to the Court of Civil Appeals, where the judgment of the trial court was reversed and rendered on a holding that Hogg, by his joining in the execution of the division order, thereby waived his lien and "put it beyond his power to recall the permission he thereby gave for the sale and purchase of the incumbered property." 254 S. W. 580.

[1, 2] There is nothing in the division order to indicate that it was the intention of Hogg to relinquish to Kimsey his lien on the one thirty-second of oil produced under said lease. The transfer of royalty interest and the division order are of date April 5, 1919, the former being acknowledged by Hogg on April 22, 1919. The vendor's lien notes are of date April 22, 1919. It is clear that it was intended that Hogg should have a lien on all the oil that Kimsey should receive under the transfer to 'him of the royalty interest. The division order does not purport to transfer the royalty interest of Hogg and Kimsey to the Magnolia Petroleum Company. It is only an agreement that for 30 days said company take their oil and pay them therefor the price posted by it on the day received,

and that they thereafter continue to take said oil until the agreement should be terminated by either party giving 10 days' notice of the purpose to terminate. The oil run was to become the property of, and title to same was to pass to, the Magnolia Petroleum Company when received. It is not in a strict sense a conveyance of oil, even for the time therein expressed. It was only an agreement that Hogg and Kimsey would sell and the company purchase their oil when and as same was produced by the owner of the lease for the time therein designated. The agreement contemplated that a change in ownership of the royalty interest might occur, and provided that Hogg and Kimsey should give notice of any such change. Either Hogg or Kimsey was at liberty to sell or mortgage his interest to whom he might desire. This, however, was to be done subject to the terms of the division order, and "subject to terms of the division order" does not mean that, after a sale has been made of royalty interest, the Magnolia Petroleum Company should reserve the right to continue to pay the seller the purchase price of the oil thereafter received. Nor does it mean that after such interest has been mortgaged, and notice thereof given, said company would have the right, over the protest of the mortgagee, to pay the mortgagor for the oil.

By the division order the Petroleum Company obtained the right to buy and receive the oil at the price prevailing at the time the same was produced, and delivered to it by the owner of the lease. It was not interested in the person to whom payment should be made. Only the owner and lienholder of the oil at the time same was to be received and bought by the company were so interested. By the terms of its contract the company was entitled to receive and purchase the oil, subject, however, to its obligation to pay the party known to it to be entitled to the purchase price. After Kimsey transferred his royalty interest to Bloch, he was no longer entitled to receive the purchase price of the oil as delivered, and, had the company continued to pay Kimsey for the oil after notice that he had conveyed his interest to Bloch over Bloch's protest, we think the company would be liable on suit against it by Bloch for conversion.

We agree with the Court of Civil Appeals in the statement that "it is well established that one who purchases mortgaged property with the consent of the mortgagee takes a good title, and cannot be held responsible for a conversion." We think that Hogg, having executed the division order with Kimsey, would be estopped, to deny that he had waived his lien on all oil purchased from Kimsey, and for which Kimsey was paid prior to his notice to the company that he was claiming a lien. However, it cannot be said that Hogg consented to sales of oil by

Kimsey to the company after such notice. By executing jointly with Kimsey the division order, he has placed himself in a position in regard to his lien as has a landlord who permits his tenant to sell in open market products upon which he has a landlord's lien. He has not expressly agreed to waive his lien, but his conduct in jointly executing the division order is such that he would be estopped to deny waiver of lien as to all oil purchased and paid for by the company prior to notice that he was relying on his lien.

We cannot agree with the holding of the Court of Civil Appeals that "by signing that division order Hogg put it beyond his power to recall the permission he thereby gave for the sale and purchase of the incumbered property." The purchase of the oil here involved occurred long after the 30 days mentioned in the order expired, and more than 10 days after the notice that Hogg was relying on his lien. The expression in the division order that "any of the owners of said well interest may, by similar [10 days'] notice to Magnolia Petroleum Company, terminate this contract as to his interest, without, however, affecting the same as to the interest of other parties," should not be construed to mean that Hogg could not, by giving notice, affect the one thirty-second interest which he had conveyed to Kimsey; he having a lien on the oil represented by such interest. As to this oil, Kimsey's interest was also his interest. All that is meant by this clause is that the notice to terminate the agreement as to one who owned an interest in the production of the oil would not terminate the agreement as to the other owners. It was not intended by this language to foreclose the rights of a lienholder, though he owned an interest distinct from that on which he held the lien, and joined in the division order.

Defendants in error, Magnolia Petroleum Company and Wynn, claim there is no lien, presenting the following propositions under their assignments of error:

(1) "No lien of any kind was created or retained on the one thirty-second royalty interest in the oil in question by the execution of the notes involved in this litigation, because, at the time they were made, Hogg had no right, title, or interest in and to such oil, but had previously conveyed all his interest therein to the Sinclair Gulf Oil Company."

(2) "Prior to the attempted creation of a lien upon the oil in question, plaintiff, Hogg, had severed said oil from the fee, and had conveyed same to Powers and his assignees as personal property; and, while there was an agreement that the Sinclair Company (Powers' assignee) should deliver to plaintiff one-eighth of said personal property, no title thereto passed to plaintiff, and no lien was by him created thereon, because the contemplated delivery was never made, either before or after the attempted creation of the purported lien."

[3, 4] Oil in place in the ground is real estate, and may be severed from the remainder of the land by conveyance. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607. When Hogg executed the lease to W. H. & D. W. Powers, he conveyed to them a determinable fee to the oil and gas in place. Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601. There remained, however, the possibility of reverter to Hogg, which he could by deed convey. Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779; Queen v. Turman (Tex. Com. App.) 257 S. W. 1092.

[5] As part of the consideration for the conveyance of this mineral estate, the grantee agreed to deliver to Hogg, in the pipe line to which the wells should be connected, a one-eighth part of all oil produced and saved from the leased premises. This consideration, which was to be so paid to Hogg, is termed his royalty interest. When Hogg executed the transfer to Kimsey, he thereby conveyed to him a one thirty-second undivided interest in his possibility of reverter, and also a one thirty-second part of the oil when produced and delivered in the pipe line. When so run, it was, of course, personal property. We think this conveyance was sufficient to transfer the title to this oil to Kimsey. If the oil could be conveyed and sold, it could be mortgaged, and the execution of the notes by Kimsey, providing for a lien on this oil, had the effect intended.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.