## MATHEWS et al. v. MYERS et al.
### No. 7637.

Court of Civil Appeals of Texas. Austin.
Oct. 21, 1931.

**1100**

Gibbs & Lewis, of San Angelo, for appellants.

Collins, Jackson & Snodgrass, of San Angelo, for appellees.

BAUGH, J.

Suit by Glenn Myers against J. H. Mathews, guardian of the estate of Lennie Lorena, Willie May, and Minnie Pearl Mathews, minors, in trespass to try title to certain lands in Pecos county, Tex. Numerous parties, grantees from Myers, intervened. Trial was to the court without a jury, and judgment for the plaintiff and interveners; hence this appeal.

The issues here involved, and the rights of the minors asserted in the lands, arise from sales of the minors' interests by the guardian, under orders of the probate court.

Mrs. M. A. Smith, grandmother of said minors, is the common source of title. In 1922, she conveyed to said above-named minors jointly, among other lands, an undivided one-eighth interest in and to surveys Nos. 2, 10, and 19, and the west 116½ acres of section 20, in block 194, Gulf, Colorado & Santa Fé Railway Company lands in Pecos county, Tex. All of this land was subsequently leased to various parties for oil and gas development, on standard 88 form leases, providing for rentals, and reserving in the grantors the usual one-eighth royalty. After the execution of these leases, under orders of the probate court of Tom Green county, the guardian sold and conveyed to Myers in 1928 certain mineral interests of the minors in said lands, and in 1929 similarly sold and conveyed what appellants contend was merely their surface rights in the lands; but what appellees contend was both surface and mineral rights, completely divesting them of all their interests in said tracts of land. There is no serious controversy over the facts, and the issues here presented are determinable largely, if not entirely, by record evidence consisting of proceedings in the guardianship of said estate, and the deeds made pursuant to such proceedings.

The first guardianship proceeding in question was commenced in 1928. In April, 1928, the guardian of the estates of said minors made application to the court for an order to sell the minors' mineral interests in numerous lands in Pecos county, including the four tracts here involved. This order was granted, and in May, 1928, sale of numerous lands other than those here involved was duly consummated. Pursuant to this same order, the guardian reported on February 6, 1929, sale of the interests of said minors in the tracts here involved to Glenn Myers, as follows:

"An undivided 1/16 interest in and to all the oil, gas and other minerals in, under and that may be produced from an undivided 1/8 interest in Sur. No. 2 * * * and 116½ acres off the west end of Sur. No. 20. And also an undivided 1/8 interest in and to all the oil, gas and other minerals in and under and that may be produced from an undivided 1/8 interest of said minors in and to Secs. Nos. 10 * * * and 19, Block 194, * * * G. C. & S. F. Ry. Co."

"Said sale being subject, however, to the existing oil, gas and mining leases, covering the last above mentioned four surveys of land, but covering and including 1/16 of the oil royalty and gas rental or royalty due and to be paid under the terms of the existing leases from said surveys Nos. 10 and 19."

On February 22, 1929, the court by order confirmed the sale as reported; that is one-sixteenth of the one-eighth interest of said minors in sections 2 and 20; and one-eighth of the one-eighth interest in sections 10 and 19.

The deed executed by the guardian recited and adopted by reference said order of sale, report of sale, and confirmation thereof, and

conveyed to Glenn Myers the following: An undivided one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described surveys of land situated in Pecos county, Tex., to wit: Section No. 10; section No. 19; an undivided one-sixteenth in and to all the oil, gas, etc., under section No. 2; and an undivided one-sixteenth of the minerals under and from an undivided one-eighth interest in the west 116½ acres of section No. 20. Following this description of the interests conveyed in said deed was the following provision: "It being understood that the above described lands are now under oil and gas leases held by various companies, and this sale is made subject to the terms of said leases; but covers and includes one-eighth (1/8) of all the oil royalty, gas rentals or royalties payable or that may become due and payable under the leases covering sections 10 and 19, and one-sixteenth (1/16) of all the oil royalty, gas rentals or royalties, payable or that may become due and payable under the leases covering Section No. 2, and one-eighth (1/8) of the west 116½ acres of Survey No. 20, in so far that said leases covers said tracts of land."

While there are some ambiguities in the above-quoted instruments, taken in their entirety, and in conjunction with each other, all as evidencing a single transaction, and bearing in mind that said minors owned only an undivided one-eighth interest in the fee to said lands, the only reasonable construction of them, and the necessary construction as a matter of law is, we think, that there was conveyed to Myers by said guardian the one-eighth of the minerals retained by the minors in sections 10 and 19 under their oil and gas leases. That is, one-eighth of the one-eighth owned by them in the entire minerals under said sections 10 and 19, or a one sixty-fourth of the entire production. Myers therefore obtained title to one sixty-fourth of the minerals under said sections 10 and 19, and a one-eighth interest in their possibility of reverter. Hogg v. Magnolia Pet. Co. (Tex. Com. App.) 267 S. W. 482, 485.

■■ It appears, however, that sections 2 and 20 were state school lands, and classified by the state as mineral grazing lands. The minors, therefore, as owners of an undivided one-eighth interest in the fee to these lands, did not own any of the minerals under same prior to the time they were leased. Under the relinquishment act, however (R. S. arts. 5367–5382) and Greene v. Robison, 117 Tex. 516, 8 S.W.(2d) 655, when the guardian leased said lands for oil and gas, they became entitled to a one-half interest in the royalties reserved, or a one-sixteenth interest in their one-eighth fee title. Their entire interest in the minerals under said sections 2 and the 116½ acres in section 20, was clearly conveyed to Myers under the orders of the court and the deed from the guardian.

The reversionary interest, or possibility of reverter, as same is denominated in Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779, and Hogg v. Magnolia Pet. Co., supra., in and to their interest in the minerals under sections 10 and 19 remained in said minors, unless same passed to Myers under subsequent conveyance. This possibility of reverter would, of course, be contingent upon a termination of such leases.

■ We think the foregoing instruments are sufficiently clear and free from ambiguity, as not to need parol testimony to disclose the intentions of the parties and of the probate court in making or executing same. It is a cardinal rule that, where such intent can be derived from a written instrument itself, parol evidence is not admissible to vary its terms. This rule would apply with equal force to the orders of the probate court which become part of the chain of title to the lands in question. Collins v. Ball, 82 Tex. 259, 17 S. W. 614, 27 Am. St. Rep. 877; Hank v. Hamman (Tex. Com. App.) 289 S. W. 993. The deed from the guardian should be construed in the light of the probate proceedings authorizing it, and, even if the guardian's deed had attempted to convey a greater interest than that ordered sold, reported as sold, and such sale confirmed, it would be void as to any excess over the interest designated in the probate proceedings. Pace v. Fishback, 10 Tex. Civ. App. 450, 31 S. W. 424; Schaeffer v. Williams (Tex. Civ. App.) 208 S. W. 220; Smith v. Patrick (Tex. Civ. App.) 297 S. W. 482, 485.

Appellees contend, however, that all of the interests of said minors passed to M. D. Bryant, through whom they deraign title, under a second guardianship sale approved by the probate court at its January term, 1929; that is, several months subsequent to the sale of the mineral interests above discussed. The remaining question is, therefore, What interests of the minors passed under these subsequent probate proceedings and the guardian's deed made pursuant thereto? The following record facts appear in that connection:

On February 26, 1929, the guardian made additional application for sale reciting that said minors owned an undivided one-eighth interest in the above-described lands; that same were being explored for oil and gas; were nonrevenue producing, etc.; and asked the court for "an order authorizing her to make sale of the minors' interest in the above described lands. * * *"

Attached to said application and made a part thereof to show "more fully the necessity for said sale" was a sworn exhibit of the guardian stating "that under orders of this court, made on May 7th, 1928, your guardian has sold all the mineral, oil and gas in and

under all of the lands described in this application."

The order of sale based upon said application recites, among other things, that the court "considered such application, the exhibit filed therewith and the evidence offered," and found that it would be advantageous to the estates of said minors to sell their undivided one-eighth interest in and to the 4 tracts of land here involved. The court also expressly found and recited in said order of sale: "That said lands ought to be sold and that it is to the best interest of the estate that it be sold for cash, because and for the reason that it appears to the court from the evidence that the minors are the owners of only an undivided interest in said lands, that heretofore under orders of this court that guardian sold all of the minerals, oil and gas in and under all of said lands, that said land is now being explored for oil and gas by the owners of said minerals and that it is not revenue producing but is wholly without value, so far as producing revenue is concerned, and that said land should be sold and the proceeds derived from such sale invested or used by said guardian under proper orders of this court"— and ordered the guardian to "sell the above described interest of the minors in the above described tracts of land."

The guardian's report of sale and the order of confirmation thereof make no reference whatever to a former severance of the minerals under said lands, but describe and relate to a sale of an undivided one-eighth interest of said minors in and to the lands in question. That is, the report of sale, the order of confirmation, and the guardian's deed, if taken independent of the order of sale, would convey to appellees all rights of said minors in said lands, mineral and otherwise. Both the report of sale and the order of confirmation, however, specifically refer to and recite that they are in obedience to said order of sale above set out.

It is now well settled that our probate courts are courts of general jurisdiction in the matters over which they are given jurisdiction; that their orders and decrees are to be given verity as such; and that same are not subject to collateral attack unless void. Many pronouncements have been made by the Supreme Court and Courts of Civil Appeals with reference to presumptions that will be indulged in favor of the validity of such sales, where the record fails to show that all of the requirements of the statutes regulating such sales were complied with; or where it affirmatively appears that some of the steps required by the statutes in sales by guardians were not taken.

However, in the instant case, all of the steps prescribed by the statute were taken, and the issues presented are not attacks upon such probate proceedings, but involve rather an interpretation or determination of what interests of the minors were in fact and in law conveyed under such proceedings. No presumptions need be indulged, because all of said proceedings were duly had and recorded, and were presented in appellees' chain of title. No one order of the probate court should be taken alone, therefore, but should be interpreted in the light of the other proceedings to which it refers or relates, and upon which it is dependent for validity. Recurring then to the second sale in probate above referred to, it is manifest, we think, from the application and order of sale that no conveyance of any minerals under said lands of the minors was authorized, contemplated, or intended.

Whether the court's recital in the subsequent order of sale, that all of the minerals had theretofore been sold, be true or not, it clearly manifests an intention, we think, to authorize and direct a sale only of the surface interest of the minors in said lands. Former proceedings in the same guardianship, of which the court could take judicial notice [Ætna Ins. Co. v. Dancer (Tex. Com. App.) 215 S. W. 962; Scott v. Clark (Tex. Civ. App.) 38 S.W.(2d) 382], disclosed that mineral rights in these lands were valuable and had been sold for large sums. The lease on some of same had brought a bonus of $200 an acre in addition to rents and royalties; and the order of sale here in question disclosed that same were being developed for oil and gas. Following this was a further finding that the interest then sought to be sold was of no value, and sale actually made on the basis of $1 per acre for the entire fee, or at 12½ cents per acre for the minors' interest. It is therefore obvious, we think, that only the interests of the minors in and to the surface of said lands was ordered sold or intended to be sold: and that only such interest passed to Bryant in the guardian's deed, even though said deed on its face appears to convey a greater interest.

The validity of such deed and the interest conveyed must depend upon the orders of the probate court. While there is some confusion in the early decisions involving cases where some of the steps prescribed by the statute were not complied with, or were not sufficiently shown, thus necessitating liberal presumptions as to their validity in old land titles; we find no need here for indulging such presumptions. All of the probate proceedings appear of record. Appellants do not attack them, but merely ask for a proper construction of them. While the report of sale and order of confirmation of what we may designate as the "surface interest" of said minors in said lands do not limit the interest conveyed, they do refer to and purport to accord with the order of sale, which, as above indicated, must be construed to relate only to such interest in the surface. And

if it could be said that there is a conflict between the order of sale and the order confirming the report of sale, the order of sale would control. The order of sale is indispensable to a valid conveyance. As stated in Schaeffer v. Williams (Tex. Civ. App.) 208 S. W. 220, 224, writ of error refused: "The power of the guardian to sell the property of his ward must depend solely upon the authority granted by the order of sale, and, if he sells different property from that for which the order was given, a confirmation of that sale could give no validity to his action in selling. The order of confirmation must follow the order of sale, * *. * and any inconsistency with the description in the order of sale must give way to it."

The subsequent sale by the guardian to Bryant did not, therefore, pass to him any interest in the minerals under said lands, if any, then owned by said minors. And, as above stated, the only interest still retained by them was a seven-eighths interest in the possibility of reverter reserved to them in the oil and gas leases on sections 10 and 19. The judgment of the trial court as to section 2 and the west 116½ out of section 20 is affirmed. As to sections 10 and 19, it is reversed and judgment here rendered awarding to said minors an undivided seven-eighths interest in their possibility of reverter under and by virtue of the oil and gas leases on said lands, made under orders of the probate court. Said minors having owned only an undivided one-eighth interest in said lands, and having already sold to Myers a one sixty-fourth interest, there would remain as such possibility of reverter only a seven sixty-fourths interest in and to the entire minerals under said two tracts of land.

Affirmed in part, and in part reversed and rendered.