## WILDER v. COX et al.

### No. 8418.

Court of Civil Appeals of Texas. Austin.

March 29, 1937.

Rehearing Denied April 28, 1937.

898

Critz & Woodward, of Coleman, for appellant.

Wilkinson & Wilkinson, of Brownwood, for appellees.

### McCLENDON, Chief Justice.

Appeal by the guardian of five of the seven children of Mrs. Grace Ruth Wilder (sometimes called Mrs. Grace Baugh Wilder) from a judgment of the district court, confirming an order of the county court setting aside $1,500 of the proceeds of the guardian's sale of the five minors' interest in remainder in a tract of land; which order was made to protect the interests of children who might thereafter be born to Mrs. Wilder, the life tenant.

The validity of the order appealed from involves two questions: (1) Whether the county court had jurisdiction to sell the interest of unborn children in a guardianship proceeding in which the estates of living remaindermen were being administered; and, if so, (2) whether the interest of such unborn children was included in the sale as made.

The controlling facts follow:

A life estate in the land sold was devised to Mrs. Wilder by her father, with remainder at her death to her children. The effect of the devise was to create a vested remainder in Mrs. Wilder's living children, subject to diminution by the letting in of after-born children as equal sharers of the estate in remainder. In 1922, Mrs. Wilder conveyed her life estate to appellees Cox and McInnis. At the same time the estate in remainder of Mrs. Wilder's then children (two in number) was conveyed through guardianship proceeding to Cox and McInnis. This latter conveyance we assume did not divest the interest of unborn children of Mrs. Wilder. Thereafter there were born to Mrs. Wilder the five children, the wards of appellant. The land devised originally embraced approximately 2,402 acres. Of this a tract of 143.8 acres was condemned by a water improvement district and the sum awarded ($4,348.60) was deposited in the registry of the county court, where the condemnation proceeding was pending. Title to this fund was thereafter adjudicated by the district court; an appeal from which judgment was pending in this court at the date of the order appealed from.

In 1934 appellant was appointed guardian of the five younger children of Mrs. Wilder, the application reciting that they "(jointly with any other child or children that might hereafter be born to Grace Ruth Wilder, the mother of said minors) own an undivided interest in the remainder, to take effect upon the death of their mother * * * in certain lands," said interest being valued at $4,500. The inventory and appraisement listed as the only property of the minors five-sevenths undivided interest in remainder in the 2,402 acres, reciting, however, the condemnation proceedings and the pendency of the suit involving the proceeds, and further reciting: "As reflected by the terms of said will the estate in remainder of the five minors hereinabove mentioned is subject to diminution in the event of the birth of any other child, or children to Grace Ruth Wilder."

The entire estate including the minors' interest in the fund in litigation was appraised at $4,500. The guardian's application for sale recites that "it would·be advantageous to the estate of said wards to

sell their interest in real estate as shown by the inventory and appraisement herein, as·follows." The property to be sold was described as a five-sevenths undivided interest in remainder in the 2,402 acres less the 143.8 acres condemned. The recited necessity for the sale was the education and maintenance of the wards. The order of sale is in substantially the same terms as the application. The bond of the guardian, required as a condition precedent to making the sale, also followed the application. The report of and order confirming the sale in like manner followed the terms of the application, except that in addition to the five-sevenths interest in remainder in the land they included relinquishment to Cox and McInnis of the wards' interest in the fund in litigation. The sales price was $4,475.66. None of these proceedings, beginning with the application for sale, refers to the interest of unborn remaindermen. The order appealed from was dated the same day as the order confirming the sale. It was an entirely separate order referring to the order of confirmation as having already been made, and recites that since, "in view of the age of Mrs. Grace Ruth Wilder * * * there is a possibility of the birth of other children to her, it is the opinion of the court that the rights of said children that may yet be born to her, in said sum of $4475.66 * * * should be protected." As stated, $1,500 of the sum was set aside for that purpose, and "no part of said sum (should) be consumed or expended for any purpose whatsoever until such time as the possibility of the birth of such other children was passed or elapsed." And further:

"It is not intended by this order, however, to forbid the investment, in the meantime, of said sum of $1500.00 in the usual statutory way, and with the approval of the court; or to prohibit the use by said guardian in the usual statutory way of the income arising from the investment of said sum of $1500.00.

"It is the sense and purpose of this order to transfer to said fund above mentioned any interest or estate that said after-born children, if any, may have in said land described in this guardianship."

There also appears in the transcript from the county court copy of an agreement of sale between the guardian and Cox and McInnis, dated the same day as the order of confirmation. There are no file marks

on this agreement. This agreement provides (subject to court confirmation) for conveyance of "all of the right, title and interest of said minors in and to said tract of 2402 acres of land," less the 143.8 acres, and in the proceeds of the fund in litigation. The only reference to any interest of unborn remaindermen in the contract appears in the concluding paragraph, which we quote: "It being further understood and agreed that as a part of the consideration for this agreement, the wards of second party for themselves and as representative of any unborn children of Grace Ruth Wilder, waive, and quit-claim in favor of first parties hereto any· and all right, title or demand in and to said fund, as· so awarded to said wards for themselves and as representative of said class under the terms of the judgment in said Cause No. 2819 on the docket of the County Court of Brown County, Texas."

The guardian's deed was executed the day after the confirmation order. It set out in full that order and by its terms only conveyed the interest of the minors in the land and the fund, no mention being made of any interest of after-born remaindermen.

■ It is now elementary that where it is necessary to protect or preserve the *property* a court having jurisdiction of the subject-matter may order a valid sale of real estate in which the contingent interest of unborn persons will be divested. In such case the unborn persons are represented in the proceeding by the living persons of the same class, and the interest of the former is transferred from the property sold to the fund for which it is sold; the court ordering the sale making proper order to protect the interest of the unborn in the proceeds. Johnston v. Johnston (Tex.Civ. App.) 276 S.W. 776; 23 R.C.L. p. 583, § 145; 34 C.J. p. 1000, § 1421.

The appellant's contention that the court did not have jurisdiction to divest the interest of unborn children is rested upon two propositions:

1. That court had no jurisdiction to adjudicate title or interest in real estate; and

2. In any event, its jurisdiction in the guardianship extended only to the interest of the minors over whose estates the guardian was appointed.

■ The first proposition is manifestly unsound. No question of adjudication of title was involved, or attempted. The ap-

plication for guardianship and the inventory and appraisement showed that under the title held by the five minors, after-born children were subject to be let in as equal sharers in the property. It further clearly appears from the proceeding that the instrument under which the wards' title is held (the will of Mrs. Wilder's father) vested a life estate in Mrs. Wilder, with vested remainder in her children in esse and in posse. If the remainder vested in the children in esse absolutely, then there would be no estate to administer, since the entire remainder would have passed to Cox and McInnis by the guardian's sale of the estate of the two older children, the five younger children (the wards here) not being in esse at that time. This entire proceeding is predicated upon the assumption that the prior guardianship sale passed only the title of the then living minors, whose interest was subject to the contingency of being reduced by after-born children.

The jurisdiction of the county court, otherwise existing over the subject-matter of a suit, is not defeated by the fact that title to real estate may be incidentally involved. City of Victoria v. Schott, 9 Tex.Civ.App. 332, 29 S.W. 681, and cited authorities; 11 Tex.Jur. p. 923, note 4.

If the entire estate in the property were vested in the minors, subject to the contingent interest of after-born children, we have no doubt of the power of the county court to sell the entire title free of such contingent interest, if such were necessary to preserve the property. In such case the interest of unborn children would be identical with that of those in esse. The interest of each would be equally in peril and the necessity to preserve common alike to all. But we have not that situation here. The estate here is only one in remainder and no necessity exists for its preservation. The sole purpose of the sale was to obtain money for the education and maintenance of the wards in guardianship. The value of their estate was materially affected by two contingencies: (1) the uncertainty of the duration of the life estate, and (2) the uncertainty of other issue of Mrs. Wilder. Only the former of these uncertainties affected the value of the interest of the unborn. To the extent that this uncertainty reduced the value of this interest its present sale would entail a sacrifice. And such sacrifice would not be in the interest of the unborn, but solely to raise a present fund for the benefit of the wards in guardianship. A serious question is thus presented whether the interests of the former are identical with those of the latter, so as to place the latter in position to represent such interest. None of the cases to which we have been cited present this question untrammeled by the concurrent necessity of preserving the entire estate. Since we are holding that the sale did not include the interest of the unborn, we find it unnecessary to express an opinion on this point.

It will be observed that none of the proceedings relating to the sale, beginning with the application and terminating with the order of confirmation, made any reference to the interest of unborn children, or purported to convey any interest except that of the five wards in guardianship. No suggestion appears that any portion of the fund derived from the sale was to be held for or encumbered with a contingent interest of the unborn. The very purpose of the sale was to raise a fund to educate and maintain the living wards. To the extent that it might be necessary to impound the fund to protect the contingent interest, that purpose would be frustrated, or in any event indefinitely delayed. Moreover, the inventory and appraisement expressly stated that the interest of the wards was subject to the contingent interest of after-born children. Only the interest of the wards was purported to be conveyed.

It is the general rule in this state that a guardian's sale only passes title to the property described in the application and order, report and confirmation of sale. Mathews v. Myers (Tex.Civ.App.) 42 S.W. (2d) 1099; 21 Tex.Jur., p. 321, note 10.

Under these circumstances we hold that only the interest of the minors in guardianship passed by the sale, and the county court was without authority to enter the order appealed from.

The trial court's judgment is reversed, the order appealed from is set aside, and the cause remanded to the trial court for certification of this judgment to the county court.

Reversed and remanded.

BAUGH, J., did not sit.